[No. 5412.   Decided March 24, 1905.]

GEORGE E. MacMARTIN *et al., Appellants,* v. GEORGE W.
STEVENS *et al., Respondents.*[1]

SALES—GOOD WILL—ENGAGING IN OPPOSITION BUSINESS—SO-
LICITING FORMER CUSTOMERS—CONTRACTS.   Where plaintiff's co-
partners in a laundry business sold out to him their interests by
bill of sale in the usual form, which contained no provisions
respecting good will, and no contract to forbear to prosecute the
same business, or to solicit patronage, the vendors cannot be en-
joined from entering into an opposition business and soliciting
the old customers to deal with them, since the rights of the
parties are fixed by the terms of the contract.

SAME—PLEADING—COMPLAINT — DEMURRER — FACTS NOT WELL
PLEADED.   In an action on a contract of sale of a laundry business,
an allegation in the complaint that the good will of the business
was the chief consideration, is a mere conclusion of law, in view
of the express terms of the contract containing no such provision,
and is not admitted by a demurrer.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered June 11, 1904, dismissing
an action for an injunction, upon sustaining a demurrer to
the complaint.   Affirmed.

*H. H. Johnston* and *T. W. Hammond,* for appellants.
The good will passed without specific mention, as part of
the business capable of producing a profit.   *Wilmer v.
Thomas,* 74 Md. 485, 22 Atl. 403, 13 L. R. A. 380; *Lane v.
Smythe,* 46 N. J. Eq. 443, 19 Atl. 199; *Fite v. Dorman,*
(Tenn.) 57 S. W. 129; 2 Bates, Partnerships, § 663.   And
in such a case, injunction is the proper remedy to prevent
the vendor from making use of his former connection.
*Trego v. Hunt,* [1896] App. Cas. 7; *Newark Coal Co. v.
Spangler,* 54 N. J. Eq. 354, 34 Atl. 932; *Althen v. Vree-
land* (N. J. Eq.), 36 Atl. 479; *Wentzel v. Barbin,* 189 Pa.

1Reported in 79 Pac. 1099.

St. 502, 42 Atl. 44; *Ranft v. Reimers,* 200 Ill. 386, 65 N.
E. 720; *Zanturjian v. Boornazian* (R. I.), 55 Atl. 199;
*Angier v. Webber,* 14 Allen 211; *Dwight v. Hamilton,* 113
Mass. 175; *Munsey v. Butterfield,* 133 Mass. 492; *Rich-
ardson v. Westjohn,* 6 Ohio Dec. 1043; *Burckhardt v.
Burckhardt,* 36 Ohio St. 261; *Knoedler v. Glaenzer,* 55
Fed. 895; *Myers v. Kalamazoo Buggy Co.,* 54 Mich, 215,
19 N. W. 961, 20 N. W. 545; *Mattingly Co. v. Mattingly,*
96 Ky. 430, 27 S. W. 985.

*Campbell & Powell,* for respondents, cited: Story, Part-
nership, § 99; *Howe v. Searing,* 19 How. Prac. (N. Y.)
14; *Cottrell v. Babcock etc. Co.,* 54 Conn. 122, 6 Atl. 791;
*White v. Jones,* 1 Abb. Prac. N. S. 328; *Spieker v. Lash,*
102 Cal. 38, 36 Pac. 362; *Longshore etc. Pub. Co. v.
Howell,* 26 Ore. 527, 38 Pac. 547.

Dunbar, J.—Action to enjoin interference with the cus-
tomers of a laundry.    A general demurrer to the com-
plaint was sustained, and the action dismissed.  Plaintiffs
appeal.

The complaint alleges, in substance, that the plaintiffs
were engaged in the laundry business in the city of Ta-
coma, under the name of the Standard Steam Laundry;
that the defendants, George W. Stevens and Edith Moon,
had at different times been copartners in said business,
had sold their respective interests to the plaintiffs, and
afterwards formed a partnership, leased a laundry plant
known as the Cascade Steam Laundry, and started in at
once to solicit customers from those of the plaintiffs.  It is
alleged, among other things, that they induced one of the
drivers of plaintiffs to leave the Standard and enter the
employment of the Cascade, and thereafter drive over his
old route and solicit the customers with whom he had be-
come acquainted; that by this means they had succeeded
in persuading many of the customers of the plaintiffs to

deal with the Cascade laundry instead of the Standard, and were engaged in persuading others to do the same thing; that, unless restrained by the court, they would continue to solicit the customers of the plaintiffs, and interfere with the business of the Standard Steam Laundry, to the irreparable injury of the plaintiffs. The acts are set forth more in detail, but we think this is sufficient to serve all purposes in discussing the case.

The agreement of sale of defendant Edith Moon was entitled, "Bill of Sale," and, after the formal portion of the article, proceeds as follows:

"Do by these presents grant, bargain, sell anu convey unto the said party of the second part, his executors, administrators, and assigns, the following goods, chattels, and property, to wit: an undivided half interest in and to the Standard Steam Laundry plant [describing it]; first parties' interest in and to any policy or policies of insurance on any of said plant or property making up same; one hydraulic washer, now stored in this city at 15th and C streets; also, four horses and three wagons, and harnesses; also, all goods and merchandise or machinery in transit purchased by the Standard Steam Laundry. . . . The intention of first party, Edith Moon, . . . being by this bill of sale to sell and convey to second party all her interest in and to said Standard Steam Laundry, and the personal property connected and used therewith, whether same is in the building or outside thereof, where said business is carried on, except her interest in and to accounts and bills receivable due for past business;"

agrees to give possession, etc.; and warrants the title to the property sold. The bill of sale of defendant Stevens is essentially the same.

We think the demurrer was properly sustained. This is an action on a contract. The contract seems to be a simple one, viz., the sale of certain specific property. There is no contract to forbear entering into the same business in the same neighborhood, or to forbear conducting an opposition

business in any manner whatever.  There is no contract
not to solicit.  The plaintiffs' rights must be determined by
what is contained in the contract, either by express provi-
sion or by plain implication, and we are unable to see that
the contract set forth bears any implications whatever.  The
markets of this country are open to all who desire to seek
them, no matter what character of commodity they are of-
fering for sale.    There is no exclusive right of sale given
by law to any one, and, unless the citizen contracts away
this right, he will be protected in it.    It is, no doubt, true
that a case of conspiracy might be shown where parties
had conspired for the purpose of injuring one's business.
But that would be so whether the conspirators had sold
their interests in the business to the complainant or not.
Strangers to the business would be as liable under such
circumstances as those who had once been partners in the
business.    It is an easy matter, in a case of this kind, if
the good will of the business is disposed of, or if there is
an agreement on the part of the parties to the contract to
forbear to prosecute the same kind of a business, or to
solicit the patronage of the public at large or of the cus-
tomers of the established business which they are selling,
to incorporate that agreement in the contract.    But, unless
it is incorporated, a plain contract of sale cannot be con-
strued into a contract to relinquish rights which are not
expressed, or the relinquishment of which is not implied.
As is well said by the respondent:

"If these bills of sale are to be construed to contain such
covenants as is claimed by appellants, it would be neces-
sary for further construction as to how long they were to
continue, and when they would end, whether in a week, a
month, or a year, or whether there would be a perpetual in-
junction on the right of the seller to establish a like busi-
ness with a right of solicitation."

It is true, it is alleged in the complaint that the good will

was the most valuable part of the business, and the retiring partners, selling all their interests in the firm and being paid therefor, sold everything connected with the business capable of producing a profit; hence, inevitably, the good will passed. But the demurrer admits only the facts which are well pleaded, and this is simply a conclusion of the pleader, while the bill of sale upon which the affidavit is based does not warrant the conclusion asserted in the affidavit.

We think no error was committed by the court in sustaining the demurrer. The judgment is therefore affirmed.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.