[No. 17362. Department One. January 25, 1923.]

# M. Francis Kane et al., Appellants, v. Gwinn Invest-ment Company et al., Defendants, Gwinn In-vestment Company et al., Respondents and Cross-Appellants.[1]

Evidence (176)—Parol Evidence to Vary Writing—Construc-tion of Contract—Patent Ambiguity. A clause in a contract for the purchase of property requiring the purchaser, as part of the consideration, to satisfy the claims of a third party by reason of an assignment of an interest in the lands, is ambiguous and admits of oral evidence of the knowledge of the parties of the surrounding facts and circumstances showing the nature of the claim.

Specific Performance (5)—Defenses—Default in Payment. Specific performance of a contract for the purchase of land cannot be decreed where it appears that, as part of the consideration, the purchaser agreed to satisfy the claims of a third party, who was in possession under an assignment of an interest in the land, and that the purchaser was in default in failing to satisfy such claim.

Vendor and Purchaser (39)—Contract—Construction—Consid-eration—Performance of Conditions. A mortgagee's contract to sell land, then in the process of foreclosure, which required the satis-faction of the claim of a third person, having at least a moral right to protection by the mortgagee, is not affected by the fact that the sheriff's deed on foreclosure thereafter created a new title in the mortgagee, cutting off the claim of such third person as a legal claim; but such claim remained as a part of the consideration of the pur-chase.

Same (39). Such part of the consideration is not waived by the mortgagee's receipt of the balance of the purchase price, after the making of the sheriff's deed, notwithstanding the contract required the satisfaction of the claim of the third person within ten days, since the mortgagee had a right to assume that the purchaser would carry out the terms of the contract of purchase.

Specific Performance (53)—Relief—Incidental or Equitable Relief. In an action for the specific performance of a contract to purchase lands, upon which the purchaser is in default, the court cannot impose a lien upon the lands in favor of the purchaser for the amount of the payments that have been made.

[1]Reported in 212 Pac. 256.

SAME (54-1)—RELIEF TO DEFENDANT. In an action for specific performance, in which defendant's offer of compromise, made before the trial, was never withdrawn, the court properly considered the same as still open.

Cross-appeals from a judgment of the superior court for King county, Allen, J., entered December 29, 1920, upon findings favorable to the defendants, in an action for specific performance, tried to the court. Affirmed.

*Rummens & Griffin,* for appellants.

*Guie & Halverstadt* and *W. W. Felger,* for respondents and cross-appellants.

BRIDGES, J.—This is a suit for specific performance of a written contract to convey real estate located in Kitsap county, Washington.

The facts are complicated. The contract on which the action is based was dated November 9, 1917, and was between Gwinn Investment Company, a corporation, one of the defendants, and M. Francis Kane, one of the appellants. By its terms, the investment company agreed to sell to Kane certain particularly described lands for $9,113.21. A small portion of the purchase price was paid down and the remainder was to be paid in deferred installments. The following clause of the contract is pertinent to the issue here:

"This upon the further consideration that said party of the second part (Kane) shall take care of and satisfy the First National Bank of Bremerton, or Mr. Harrison of said bank, in their claim by reason of their assignment of all interest therein by C. E. Thomas, and shall furnish to said party of the first part (Investment Company) written acknowledgment of said bank or other person to the effect that such satisfactory arrangement has been made, the same to be furnished within ten days from this date. In case a satisfactory arrangement cannot be made by said

11—123 WASH.

second party (Kane) with the said First National Bank of Bremerton or Mr. Harrison then, and in that event, said money so deposited as part payment hereon, less the cost of bringing the abstract down to date, and attorney's fees in this matter, shall be returned to the said party of the second part.''

In order to make an intelligible discussion of the case, it seems necessary to give a history of the title to the property. In the first place of all, the Bremerton Lumber Company was its owner, and which in January, 1913, mortgaged it to W. L. Gwinn, who was the president of the Gwinn Investment Company, to secure a note of $5,000, which note and mortgage were subsequently assigned to the Gwinn Investment Company. A little more than a year thereafter—in March, 1914—the lumber company mortgaged the property to Gwinn Investment Company to secure $2,000. About a year thereafter the lumber company mortgaged the property to C. E. Thomas to secure $2,000.

While the title to the property was in this condition, the investment company caused a suit to be commenced to foreclose its second mortgage, to wit, the $2,000 mortgage given in March, 1914. The Bremerton Lumber Company, the First National Bank of Bremerton, Thomas and one Kennedy were made defendants. In due course, the mortgage was foreclosed and the property bought in by the investment company, and a sheriff's certificate of sale was made to it September 9, 1916, and, the year of redemption having expired, on October 18, 1917, a sheriff's deed was issued to the investment company. After the sheriff's sale, but long before the issuance of the sheriff's deed, the investment company and Thomas entered into an oral agreement whereby the latter was to buy from the former the property involved for the amount which had been paid at the sheriff's sale, plus interest and the amount

of its first mortgage, plus interest. Thomas was at once put into actual, physical possession of the property.

After this oral agreement was made, Thomas entered into a written agreement with the Kanes whereby he agreed to sell the property to them, and they agreed to purchase the same, for $17,500; $1,200 of which were paid down in cash and deferred payments were provided for the balance of the sale price. After the Kanes had made some deferred payments, Thomas got into some financial or other difficulty, and in October, 1917, he made a quitclaim deed to the property to B. F. Harrison, and also assigned to Harrison all of his right, title and interest in and to the contract he had previously entered into with Kane, thus giving Harrison authority to collect the balance of the deferred payments. The Kanes were notified of these transfers. The investment company had knowledge of all these transactions. It was while the title was in the condition above recited that the contract here sued upon was made, and the trial court expressly found that the Kanes had full knowledge of the title to the property and made the contract with the investment company with such knowledge.

The court found that the clause in the contract sued upon, to the effect that the Kanes were to "take care of and satisfy the First National Bank of Bremerton, or Mr. Harrison of said bank, in their claim by reason of their assignment of all interest therein by C. E. Thomas" referred to the interest received by Mr. Harrison from Thomas, as above indicated, to wit, the quitclaim deed to the property and the assignment of the contract of purchase between Thomas and Kane, and the court found that it was the intention of the clause above quoted to require the Kanes to pay such

claim or demand as Harrison might thus have or make. Shortly after the contract sued upon was made, the Kanes interviewed Harrison concerning his rights and were informed by Harrison that he would take $5,300 in discharge of such rights. The Kanes did not pay the Harrison demand, and have not yet paid it, but they continued to pay on the purchase price to the investment company, and when the whole of that purchase price was paid, to wit, some $9,100, they demanded a deed from the investment company, which was refused because the Kanes had not lived up to their contract and had not paid the whole of the purchase price, in that they had not made any disposition of the rights of Mr. Harrison. At this point it should be said that the First National Bank of Bremerton disclaimed in this action, and it will not, therefore, be again mentioned.

The court also found that, at the time the Kanes agreed to buy the property of the investment company, it was worth at least $17,500. The court concluded that the Kanes were in default in failing to perform their portion of the contract and were not entitled to specific performance, but further concluded that if they would pay Harrison the $5,300 which the latter had originally demanded, such sum to be paid at times fixed by the court, then specific performance would be granted and the investment company would be required to convey the property to them; but in the event they did not make such payments to Harrison, then the action was to be dismissed, at which time the investment company should deed the property to Mr. Harrison. The judgment was in accordance with these conclusions. The plaintiffs have appealed, and the defendants Harrison and wife and the investment company have cross-appealed.

The trial court considered the Harrison-Thomas

clause of the contract involved here as ambiguous, and, over the objections of the appellant, received considerable oral testimony designed to remove the uncertainty. In a general way, this testimony explained that the investment company, before it received the sheriff's deed, made an oral contract to sell the property to Thomas, and as a part performance put the latter into possession, and that the company considered itself bound by the agreement; that Thomas entered into a written contract to sell the property to the appellants and that the latter had full knowledge of the then condition of the title; that a part of the purchase price was paid down by the appellants and they were put into possession; that later Thomas transferred this contract to Harrison, of which fact both the investment company and the appellants had full knowledge; that, when the appellants made their contract with the investment company, they knew that the latter wished to protect Harrison on the Thomas contract, whether it was legally bound to do so or not. Much of the testimony showing the facts as indicated was stoutly denied by the appellants, but a reading of the record does not convince us that the trial court came to the wrong conclusions on the facts. Throughout the trial, the appellants denied that their contract with the investment company imposed any obligations or duties on them in so far as Harrison was concerned.

It seems plain to us that the Thomas-Harrison provision of the contract was ambiguous, and for the purpose of explaining the meaning, it was proper to receive the oral testimony, showing the knowledge of the parties at the time the contract was entered into, and the surrounding facts and circumstances which led up to its execution. Without this testimony, the debated clause was obscure. With it, if the testimony of the respondent is to be believed, the uncertainty disap-

pears. In its efforts to arrive at the meaning of a doubtful clause in a written contract, the court is always entitled to the possession of such surrounding facts and circumstances as the parties to the contract possessed at the time they executed it. *Leavenworth State Bank v. Cashmere Apple Co.*, 118 Wash. 356, 204 Pac. 5. Construing the contract in the light of this oral testimony, the trial court correctly found that it was a part of the consideration that the appellants should make satisfactory arrangements with Harrison concerning his interest received through Thomas. This portion of the consideration has never been paid because Harrison has not been satisfied and for this reason the appellants are not in position to demand a deed.

The appellant contends that the sheriff's deed was issued to the investment company after this contract was entered into, and that it created a new title to the property and all previous rights, including those of Thomas and Harrison, were foreclosed and cut off. That argument, however, seems to us to be beside the question. It was while the foreclosure proceedings were pending that the investment company orally agreed to sell the property to Thomas in the event it should obtain title under the foreclosure. Under these circumstances, the investment company was at least deeply morally bound to protect the persons who had become the owners of the rights which Thomas had thus acquired, and if our construction of the contract is correct, the investment company did undertake to protect such outstanding interest and imposed that duty upon the appellants, and they have failed to perform it. In any event, the investment company had a perfect right to recognize its obligation on account of the Thomas contract and impose the burden thereof on the appellants.

Appellants assert that their contract requires them to make such satisfactory arrangements with Harrison within ten days from its date, and that, since they failed so to do, but continued making payments to the investment company, that company is estopped to deny that the appellants have not complied with their contract. We cannot so look at the question. The investment company had a right to assume that the appellants intended to, and would, carry out their contract, and the mere fact that it received the purchase price from them could not constitute a waiver on its part of the clause in the contract requiring the appellants to make satisfactory arrangements with Harrison.

Appellants assert that, in any event, if these lands are to be conveyed by the investment company to Harrison, as the decree provides, a lien should be imposed upon them in their favor for the amount which they have paid on the purchase price. The answer to this argument is in the contract itself. It fixes the terms of the purchase. We know of no rule of law which would permit the court to impress a lien upon land being purchased by one for such amount of the purchase price as he has paid, when that purchaser is in default and has not lived up to other important features of the contract. But the trial court, in an apparent effort to be entirely fair to all parties concerned, has gone somewhat out of its way to provide in its decree that the appellants may yet, upon easy terms, perform the delinquent portion of their promise and obtain title to the property. We certainly cannot go farther than the lower court has gone in this regard.

By the cross-appeal, Harrison contends that the amount, to wit; $5,300, which the court requires the appellants to pay to him in performance of their contract with the investment company, is insufficient and

should have been $8,555.67, with interest, such sum being the balance due under the terms of the Thomas-Kane contract. But Mr. Harrison agreed to compromise the matter upon receipt of $5,300. It is true this proposition was made some months before the trial of this case, but we do not find anything in the testimony showing that the proposition had been withdrawn. It is also true the trial court found that this proposition was for "immediate acceptance," but we think that finding is much stronger than the evidence would justify. From our reading of the testimony, we are convinced that, at the time of the trial, the $5,300 proposition was still open.

The judgment is affirmed.

PARKER, MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.