[No. 19775.  Department Two.  April 16, 1926.]

SAMUEL T. WEST et al., *Respondents*, v. HERMAN H. HOFFMAN, et al., *Appellants*.[1]

[1] FRAUD (8)—RELIANCE ON REPRESENTATIONS—MEANS OF KNOWLEDGE OF PARTIES—EVIDENCE—SUFFICIENCY. The vendee is entitled to recover for fraud in the sale of lands in the arid district, induced by false representations that the soil was good and suitable for a commercial orchard, and which appeared to be so at that time of the year, the vendees being strangers and unacquainted with fruit culture, when it was known to the defendants and experienced orchardists that the soil was underlaid with hardpan or cement formation, wholly unsuited for orchard purposes.

[2] WITNESSES (69)—RECALLING WITNESSES. Error cannot be assigned on recalling a party to testify to an essential matter not touched upon at first, on the ground that the "after-recess testimony" was unworthy of credence; its weight being for the jury.

[3] FRAUD (8, 25)—FRAUDULENT REPRESENTATIONS—QUESTION FOR JURY. The vendees' right of action to recover damages for fraud in the purchase of land, represented to be good orchard land, is not defeated by the fact that the vendee made an inspection of the lands, where the vendee was unfamiliar with the conditions, which appeared good at that time of the year, and the land was underlaid with hardpan, and wholly unsuitable, as was well known to the vendor.

[4] SAME (11)—ACTIONS—WAIVER OF RIGHT OF ACTION. The vendees' right of action to recover for fraud in the sale of orchard land is not waived by staying on the land and attempting to make good on being urged to do so by the vendors, until, by expert advice, the cause for failure of crops was disclosed and the false representations discovered.

[5] SAME (11). The giving of a quit claim to the vendor does not estop the vendee from claiming damages for fraud, where the contract was terminated because of the vendee's inability to pay and the possession surrendered by mutual consent, after part payments were made and the fraud discovered.

[6] VENDOR AND PURCHASER (44, 159)—AGREEMENT TO RESCIND—FRAUD OF VENDOR—RECOVERY OF PAYMENTS. In an action for fraud in the sale of orchard lands, which were used for some years

Reported in 245 Pac. 419.

before discovery of the cause for the failure of crops, the defendants are not entitled to an instruction that they could offset the reasonable rental value of the premises while used by the plaintiffs, when there were no net profits in such use, and there had been a mutual rescission because of inability to make payments, without waiving the plaintiffs' right of action to recover purchase money paid, or any claims for recoupment.

[7] FRAUD (26)—REPRESENTATIONS—INSTRUCTIONS. In an action to recover for false representations as to a "commercial orchard" sold to the plaintiffs, an instruction to the effect that the statement that it was a "commercial orchard," if made, could be considered as a material fact on which plaintiff could rely, was not erroneous, in view of the great bulk of evidence as to what the words meant, in that community.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered June 27, 1925, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for fraud. Affirmed.

*Carrie Grosenbaugh* and *Richards, Gilbert & Fontaine,* for appellants.

*Snively & Bounds,* for respondents.

MITCHELL, J.—Plaintiffs, Samuel T. West and wife, of Seattle, Washington, entered into a written contract on June 27, 1922, with defendants, Herman H. Hoffman and wife, of Yakima, Washington, by which the former agreed to purchase of the latter a twenty acre orchard near Yakima. Plaintiffs operated the ranch and being unable to make their payments, the contract was by mutual consent terminated and possession of the orchard delivered to the defendants on October 30, 1924, at which time the plaintiffs executed and delivered a quitclaim deed to the orchard property to the defendants. Thereafter plaintiffs brought suit to recover the amount of several payments they had made, together with interest, because of alleged misrepresentation of the defendants inducing the sale upon which they alleged they relied. The defendants denied the

allegations or charges of misrepresentation, set up affirmative defenses and counterclaimed in damages in amounts in excess of the total sued for by the plaintiffs. The cause was tried to a jury. The defendants have appealed from a judgment on the verdict in favor of the plaintiffs.

[1] The first contention of appellants is that the evidence was insufficient to take the case to the jury. The respondents were strangers to that vicinity, having lived in Seattle a good many years. They were unacquainted with the business of fruit growing on irrigated lands. They became interested in this venture through a real estate agent of appellants at Yakima, who, as he testified, was engaged to sell or trade the orchard. It is claimed that it was represented by the agent, as he took them over the land, that it was good deep soil, suitable for an orchard; that it was a good commercial orchard and that it would pay for itself. It was so alleged in the complaint, and so testified to by the respondents. They testified that the agent so told them and that, on the occasion of entering into the contract on June 27, 1922, the agent, in the presence of Mr. Hoffman, represented that it was good deep soil, good for orchard, and that Mr. Hoffman then said it was a good commercial orchard and would pay for itself.

They further testified that they relied on the representations, without which they would not have agreed to make the purchase. There was ample credible evidence that the soil was thin and underlaid with what is termed hardpan or cement, and wholly unsuitable for successful fruit growing; that the orchard looked promising early in the season, about that time of the year the contract in this case was made, but that it fell back as the season progressed, producing apples

of an inferior grade and insufficient in quantity; and that from year to year trees died on account of lack of sufficient soil. Experienced orchardists in the vicinity so testified. Prior to respondents' venture, others had agreed to buy from appellants, who, upon trying to raise fruit, were compelled to give up the place because the soil was too shallow for growing fruit. It is true, there was contradictory evidence, more particularly as to the representations claimed to have been made as to the soil and that the orchard was a commercial one. But having seen that there was very substantial evidence to sustain the verdict, this is as far as we are permitted to inquire. The case is similar in many of its most important and controlling facts, in this respect, to *Bickford v. Uthe,* 134 Wash. 636, 236 Pac. 276, where a purchaser was permitted to recover after the contract had been terminated by mutual consent. If it be assumed that the authority of the agent of the appellants was not sufficient to bind them by representations he made while showing the property to the respondents, the admission of that testimony was not prejudicial, as it was repeated in the presence of the appellant at the time the contract was entered into.

[2] When respondent was first called on to testify concerning the conversation in the presence of Mr. Hoffman, at the time of signing the contract, his account of it did not include any reference to the quality of the soil. Later he was recalled and testified fully that the representation in that regard was made in that conversation. Appellants objected to, and still insist, that the so-called "after recess testimony" is unworthy of credence for sustaining the burden of clear and convincing proof required in fraud cases. We cannot so hold, as a matter of law. The complaint alleged that matter, and the fact that it was not testified to until

the witness was recalled was incidental to the trial, and, if the incident was worthy of consideration, it was a matter for the jury.

[3] It is further argued that the respondents should not prevail, because of opportunity on their part to inspect the premises. But we are inclined to the view that under the circumstances—the known unfamiliarity of the respondent with the subject-matter, the fact that reliance was had on the appellants, the kind of deficiency in the premises complained of, together with the knowledge of that deficiency that must have been possessed by the appellants in their ownership of the property for years, and having it complained of for this very reason by former occupants and prospective purchasers—the case was properly given to the jury. *Hahn v. Brickell*, 135 Wash. 189, 237 Pac. 305; *Bickford v. Uthe*, 134 Wash. 636, 236 Pac. 276; *Community State Bank v. Day*, 126 Wash. 687, 219 Pac. 43; *Christensen v. Koch*, 85 Wash. 472, 148 Pac. 585.

[4] Another assignment of error invokes the rule of waiver and ratification. But we do not think it applicable here. True, respondents noticed each season that the fruit did not continue to grow as it should towards the latter part of the season, although, as it appears from the evidence, they gave the orchard the usual attention and cultivation; but, upon complaint to the appellants, they assured respondents that they would make it yet, and to stay by the orchard. They persisted until they took independent advice and had the soil examined by qualified persons; when, upon learning the truth, they then stated they could no longer continue the enterprise. The mortgaging of a crop to the appellants only complied with the terms of the contract itself, else it was a renewal because of the

failure of a crop to pay what it had been mortgaged for.

[5] It is argued that, by the quitclaim deed given by the respondents to the appellants, there was a mutual rescission which bars any recovery on the part of the respondents. The circumstances under which the deed was given were similar to those in *Bickford v. Uthe, supra.* It was not given or intended as a waiver of any right of action the respondent had as set up in this action. The jury was fully justified in so believing from the testimony introduced at the trial.

[6] The jury was instructed that, if they found for the plaintiffs on the allegations of fraud, the defendants were entitled to have offset against such recovery the amount plaintiffs had realized as the net proceeds derived by them from the operation of the orchard. The instruction is complained of as not the proper measure of damages, and it is insisted in this respect that, if the plaintiffs were entitled to recovery under their allegations of fraud, the appellants would be entitled to recover, among other things, the reasonable rental value of the premises which they alleged was $1,000 per year. But we think the instruction was proper, or certainly not harmful to the appellants, because, under this division of the answer, it was alleged that respondents had raised on the place during the years 1922 and 1923, fruit of the value of $7,170.90, all of which they had appropriated to their own use. Under this allegation, testimony was introduced as to the amount and value of the crops for those years which, together with other proof it necessitated, was altogether sufficient to satisfy the jury that there was no net profit, but on the contrary a loss.

As to the rental value of the premises, appellants were not entitled to offset that against plaintiff's re-

covery in this case, where there had been a mutual re-scission of the contract, the respondents not waiving their right of action to recover back money paid by them. This is a case in which because of the declared inability of the respondents to make payments after trying out the orchard and discovering its deficiency, there was a mutual, rescission of the contract without any claim on the part of the appellant of recoupment. It was not a declaration of forfeiture on the part of the appellants against the respondents, but, as stated, a mutual abandonment and rescission of the contract. In *Jones v. Grove,* 76 Wash. 19, 135 Pac. 488, the case of *Bernardo v. Soderman,* 19 Cal. App. 161, 124 Pac. 866, was in part quoted wherein is the statement:

"In short, it is the law that, upon the vendee's breach followed by a mutual agreement of abandonment and rescission, the vendee is entitled to a repayment of his money."

And following it this court said:

"In the present case, there is no question of rent or damages. The respondents, if they ever surrendered possession, have apparently resumed it. The contract being at an end by virtue of the rescission, the appellants had the right to recover the money paid thereon, together with interest at the legal rate."

[7] Further complaint is made that an instruction, with reference to the statement, if made, that the orchard was a commercial one, was erroneous and harmful. The instruction was in effect that, if the statement was made, it might be considered as a material fact upon which the purchasers had a right to rely, and therefore actionable, provided the other necessary elements constituting fraud were present and it appeared that such representation was untrue, for the sole reason that such orchard was not located upon deep soil and that the lack of sufficient depth of soil alone made the or-

chard unsuitable for commercial orchard purposes. The instruction, we think, was as favorable to the appellants as they could reasonably ask, particularly in view of the great bulk of the testimony upon the point which showed what the words "commercial orchard" meant, and that they had a well defined, well understood meaning as such in that community.

Other assignments of error have been indirectly disposed of by what we have already said. In the trial of the case, the jury viewed the premises at an appropriate time under the directions of the trial court.

Upon a consideration of the evidence and other portions of the record, we reach the conclusion that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MAIN, MACKINTOSH, and PARKER, JJ., concur.