JAMES HENRY LEA *et al., Appellants,* v. ALFRED E.
YOUNG *et al., Respondents.*[1]

[1]Reported in 12 P. (2d) 601.

*Geo. B. Cole* and *John Wesley Dolby,* for appellants.
*Ballard & Houghton* and *Earle V. Ticknor,* for re-
·spondents.

Holcomb, J.—This action was begun in the court be-
low to recover $2,796 alleged to be due and owing to
appellants by reason of respondents having rescinded
a real estate contract which had existed between the
parties.

The complaint alleges that, on April 8, 1929, the
parties entered into a written contract whereby re-
spondents agreed to sell and appellants agreed to buy
a parcel of real estate in King county for $7,100, of
which $2,194 was paid at the time, $3,600 was to be
paid by the assumption of a mortgage, and the bal-
ance of $1,306 was to be paid in monthly installments;
that appellants paid on the mortgage $432 and $160 in
monthly installments, or a total, including the original
payment, amounting to $2,796; that thereafter, on
March 27, 1931, respondents began action against ap-
pellants in King county, in and by which action they
elected to rescind and did rescind and cancel the afore-
said contract, repossessed the land, ejected appellants
therefrom, and in that action a judgment and decree
was taken on May 6, 1931, rescinding and cancelling
appellants' rights in the contract and land; that, by
reason of the matters so alleged, there became due and
owing to appellants the sum of $2,796 theretofore paid
by them on the contract. The real estate contract as
well as the complaint and judgment in the former
action referred to in appellants' present complaint,
are by reference made a part thereof.

The contract incorporated in the former complaint
provided that appellants were entitled to the posses-
sion of the premises from the date of the contract, and
further contained the following provision:

"Time is the essence of this contract, and in case of failure of said vendees (plaintiffs) to make the payments or perform any of the covenants on their part, this contract shall be terminated at the election of the said vendors (defendants), their successors or assigns, and the said vendees (plaintiffs) shall forfeit all right to acquire the said lands hereunder, and all payments made under this contract shall be retained by the said vendor (defendants) or their successors or assigns, in full satisfaction and liquidation of all damages by the vendors (defendants) or assigns sustained; and they shall have the right to re-enter and take possession of said lands and premises and every part thereof."

The complaint in the former action contained the following allegations:

"(5) That defendants have failed and neglected to make the monthly payments of $20.00 each which fell due on the 16th of the months of May, June, July and December, 1929; February, June, July, September, October, November and December, 1930; January, February and March, 1931, and $10.00 of the $20.00 installment which fell due on August 16th, 1930. Defendants have also failed and neglected to pay the 1929 taxes, which became a lien on said premises after the execution of said contract on April 8th, 1929.

"(6) That on March 9th, 1931, plaintiffs notified defendants in writing that unless they paid said delinquent payments and delinquent taxes in full by March 23rd, 1931, plaintiffs would elect to cancel said contract and terminate all of defendants' rights in said property and in said contract of purchase.

"(7) That the time given defendants in said notice was a reasonable time within which to make said payments, but defendants have failed to make said payments or any part thereof and that plaintiffs have elected and do hereby elect to terminate and cancel said contract.

"(8) That defendants are occupying said premises and at all times since March 23rd, 1931, have been wrongfully occupying the same and withholding the possession thereof from plaintiffs who are entitled to

the immediate possession of the same. That the reasonable rental value of said premises is the sum of forty dollars per month and defendants have been damaged and will continue to be damaged at the rate of forty dollars per month during the time that defendants continue to occupy said premises from and after March 23rd, 1931."

and concluded with the following prayer:

"WHEREFORE, plaintiffs pray that said contract be declared rescinded and cancelled and that plaintiffs' title to said property be quieted against all rights, title, interest and claims of defendants and each of them and of all parties claiming by, through or under them or either of them, and that plaintiffs have judgment against defendants at the rate of forty dollars per month for each month that defendants continue to occupy said premises after March 23rd, 1931, and that plaintiffs recover their costs and disbursements herein together with such other and further relief that may be deemed equitable."

The judgment was entered by default and the material part of it reads:

"IT IS THEREFORE BY THE COURT ORDERED, ADJUDGED AND DECREED that that certain real estate contract entered into on April 8th, 1929, between the above named plaintiffs as vendors and the above named defendants as vendees for the sale of the following described real property in King county, Washington, to-wit: (description) be and the same is hereby rescinded and cancelled and that all rights of defendants as vendees under said contract are hereby terminated and ended and that plaintiffs' title to the above described real estate is hereby quieted against any and all rights, titles, interest, and claims of defendants and each of them and of all parties claiming by, through or under them or either of them.

"IT IS FURTHER ORDERED AND DECREED that plaintiffs be let into the immediate possession of said described premises and that if defendants shall fail or refuse for a period of five (5) days from the date of this judgment to surrender the possession of said

premises to plaintiffs, this court will upon application of plaintiffs issue a writ of assistance directing the sheriff of King County, Washington, to place plaintiffs in possession of said premises.

"IT IS FURTHER ORDERED that judgment be and hereby is entered in favor of plaintiffs and against defendants and each of them and their marital community in the sum of Fifty-six and no/100 ($56.00) Dollars and for plaintiffs' costs and disbursements herein to be taxed by the clerk."

A demurrer interposed by respondents to the complaint of appellants herein was presented upon two major questions: (1) Was the former action one to rescind the contract, or one merely to terminate it and forfeit the payments already made? and (2) Is the judgment in the former action *res adjudicata* of the present action?

The trial court sustained the demurrer to the complaint, appellants stood upon the complaint, and the action was dismissed, from which this appeal results.

Respondents made no appearance or argument in this court at the Departmental hearing.

The memorandum opinion of the trial judge stating his reasons for sustaining the demurrer is quite able and lengthy, and we set out the essential portions of it:

"The plaintiffs urge as a preliminary point that since their complaint alleged a rescission in the former action, this must be taken as admitted by the demurrer, and that the demurrer must be overruled. A demurrer only admits those facts that are well pleaded. It does not admit a conclusion of law nor facts which may be inferred from a legal conclusion, nor a general allegation when the complaint taken as a whole negatives the idea of the general allegation.

"*Franklin Savings Bank v. Moran,* 19 Wash. 200; *Hester v. Thomson,* 35 Wash. 119; *MacMartin v. Stevens,* 37 Wash. 616; *Freeman v. Centralia,* 67 Wash. 142; *Longfellow v. Seattle,* 76 Wash. 509.

"While the complaint here does allege that defendants elected to rescind and did rescind the contract, it alleges that such acts were by virtue of proceedings in the former action, which are referred to and by such reference specifically made a part of the present complaint; so that we are to look to the entire record as pleaded in order to determine the nature of defendants' acts, rather than to plaintiffs' conclusion thereof. In other words, we must determine what the thing is by considering it rather than merely accepting the pleader's conclusion regarding it.

"It will be noted, first, that by the contract plaintiffs were entitled to the use and possession of the premises during the time of existence of the contract; that time was made the essence of the contract; and that in case of plaintiffs' failure to make the payments, then the contract should be terminated at the vendors' (defendants) election, and the plaintiffs should forfeit all rights thereunder, and all payments made were to be retained by the vendors (defendants). The act on the part of the defendants which called for an election was the *termination* of the .contract, not the *forfeiture* of plaintiffs' right thereunder, nor the *retention* of the payments theretofore made. According to the language of the contract itself, when the defendants *elected to terminate* the contract, then plaintiffs' rights thereunder became forfeited and the payments theretofore made remained the property of the defendants as satisfaction and liquidation of all damages sustained by them.

"It will next be noted that in the complaint in the former action the 'time and forfeiture' clause was set out in *haec verba,* thus calling plaintiffs' specific attention to the nature of the breach relied on and the right and remedy flowing therefrom. That complaint further set forth specifically the defaults in payments and an allegation that notice had been given these plaintiffs that unless the delinquent payments were paid in full these defendants would *elect to cancel* the contract and *terminate* plaintiffs' right therein. There was a further allegation that the contract had been formally terminated and cancelled.

"The first time that the word 'rescind' was used was in the prayer of the former complaint, already quoted above.

"The judgment provided that the contract 'be and the same is hereby rescinded and cancelled, and that all rights of defendants (plaintiffs here) as vendees under said contract are hereby terminated and ended,' etc.

"It will be further noted that the complaint in that action alleged that plaintiffs in this action had been wrongfully occupying the premises since May 23rd, 1931, which day marked the end of the time within which defendants demanded performance of their notice; that the prayer asked judgment for $40.00 per month for the use of the premises after March 23rd, and that it was allowed by the court in its judgment and decree.

"Whether the plaintiffs in the former case, that is the defendants here, elected to rescind or merely terminate the contract is a matter of intention. Of course, the intent must register itself in the act, and the intention must be gathered from the instruments before us. Nevertheless it is a question of intent.

"I am satisfied from an examination of the exhibits pleaded and made a part of the complaint here, that the defendants intended, not to *rescind,* but to *terminate* the contract with the consequent right flowing from such termination. I am also satisfied that the plaintiffs here fully understood from the notice served upon them and from the complaint that followed, that that was the defendants' intention. I am further satisfied that that intention is fully expressed by the record in the case.

"Plaintiffs' argument centers about two contentions: (1) that there was no notice of election to forfeit and retain the payments, and (2) that defendants indicated their intention to rescind the contract because the word *rescind* is used in several places. As to the first contention, I have already pointed out that the only election that defendants were called upon to make was an election to *terminate* the contract; having made that election, the right to retain the payments followed, under the terms of the agreement. As to the second

contention, while the word *rescind* is somewhat loosely used, it is apparent from the context and all of the instruments taken together that the word was used, not in the sense of a rescission *ab initio* but merely in the sense of terminating the future validity and continuance of the contract.

"Quoting some of the definitions and uses of the particular word, we note:

" 'Rescind: as the word is applied to contract, to rescind in some cases means to terminate the contract as to future transactions, while in others it means to annul the contract from the beginning.' Ballantine Law Dictionary, p. 1125.

" 'Rescind: to abrogate, annul, avoid or cancel a contract; synonymous with "terminate".' 34 Cyc. 1628.

" 'Rescind: under the rule that the effect of a pleading is not necessarily determined by the technical definition of a single word, but that words used in a pleading must be construed with reference to the context, and when it is apparent that a word is not used in its statutory sense it will be interpreted in relation to the pleading as a whole. In an action to recover sums paid under a contract of conditional sale and the retaking of possession by the seller, where the answer alleged that the seller rescinded and cancelled the contract on default in payment of the price by the buyer, the words "rescind" and "cancel" are not used to indicate a statutory rescission of the contract.' Words and Phrases, 2nd Series, Vol. 4, p. 327.

*"Pfeifer v. Norman,* 133 N. W. (N. D.) 97; 38 L. R. A. (N. S.) 891; *Finly & Co. v. Sworsky* (Conn.) 130 Atl. 561; *DeMille Co. v. Casey,* 109 N. Y. S. 275; *Hurst v. Trow's Ptg. & Bookbinding Co.,* 22 N. Y. S. 371.

"I am satisfied that the word was used not in a technical sense, but in the sense of terminating the contract.

"The fact that defendants intended to forfeit and retain the payments as liquidated damages, is emphasized by the fact that in the former complaint they asked for judgment for the use and occupation of the premises subsequent to the time of such termination.

"But whether there was a rescission or merely a termination, I think that the former judgment is *res adjudicata* of this action.

"It is true that ordinarily *res adjudicata* is a matter of defense and must be pleaded. But here the former judgment and all matters connected therewith have been fully set out by plaintiffs themselves in this action. The demurrer, therefore, reaches it. It would be useless to require defendants to set out the same thing again to indicate affirmatively that they were relying upon the plea.

" 'The general doctrine is that the plea of *res adjudicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.' *Woodland v. First National Bank of Lind,* 124 Wash. 360.

" 'The rule is often stated in general terms that a judgment is conclusive not only upon the questions actually contested and determined, but upon all matters which might have been litigated and decided in that suit; and this is undoubtedly true of all matters properly belonging to the subject of the controversy and within the scope of the issues, so that each party must make the most of his case or defense, bringing forward all his facts, grounds, reasons or evidence in support of it, on pain of being barred from showing such omitted matters in a subsequent suit; and it is also true that, where the second suit is upon the same cause of action, all matters which might have been litigated are conclusively settled by the judgment.' 34 C. J. 909.

"*Anderson v. National Bank of Tacoma,* 146 Wash. 520.

"In the last case above cited much the same argument was made by plaintiff there as is made by plaintiffs here, on the effect of a demurrer, and it was held that where the complaint itself shows upon its face that the question at issue has been adjudicated, the defect may be reached by demurrer. The court, in

passing on the question, cites the two quotations above given.

"Nor does the fact that the judgment was taken by default in the former case, make any difference. *Judish v. Robig Lumber Co.*, 128 Wash. 287.

"Throughout their brief counsel for plaintiff speak of a *mutual rescission*. In the opinion of the court there was no mutuality of, or accord between, the parties respecting the termination (or even rescission, if so denominated) of the contract. Plaintiffs did not comply with the notice given by defendants. They did not yield nor recognize the right of possession in defendants. Their position was hostile and continued until the court ordered them, in its judgment, to surrender the premises or else have a writ of assistance issued against them. Mutuality signifies assent or accord, not dissent and strife.

"The demurrer will be sustained."

We have examined texts and authorities referred to by the trial judge, and find that they sustain his opinion. Furthermore, it is the general rule in nearly all jurisdictions that a party to a contract cannot breach it, and thereby secure for himself some right or advantage to the detriment of the other party thereto. Hence, the vendee who, without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate, cannot recover from the vendor either the amount paid on the purchase price, or a deposit by him as earnest money or as a forfeiture, where the vendor is ready, able and willing to perform his part, as was pleaded and adjudged in the former case between these parties. See annotations to *Nicolopoolos v. Hill*, 217 Ala. 589, 117 South. 185, 59 A. L. R. 185 at 194.

Among a great number of cases cited as supporting that rule are our own cases of *Bock v. Celleyham*, 100 Wash. 545, 171 Pac. 525; *Rafferty v. Gaston*, 118 Wash. 689, 204 Pac. 595; *Kane v. Gwinn Investment Co.*, 123 Wash. 320, 212 Pac. 256.

An examination of our cited cases shows that they sustain the annotator's construction thereof. In the *Bock* case, *supra,* we held that the vendees could not rescind after the vendor gave notice of forfeiture, since an election by either party under such clauses terminated the contract. In the *Rafferty* case, *supra,* we held that a purchaser of real property under an executory contract making time of its essence, who defaults in payments without the acquiescence of the vendor, cannot recover the amount paid on the contract, though the vendor, subsequent to the default, has sold the property to another. In *Thiel v. Miller,* 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523, we held that the failure of vendees to comply with the terms of the contract of purchase in substantial respects, after fair opportunity to do so, entitles the vendors to give notice of forfeiture under the terms of the contract.

It will be borne in mind that appellants set up the former complaint against them, in which it was alleged that notice had been given them before any attempt at forfeiture or termination of the contract had been made, to make the payments required by the contract. Hence, this complaint must be tested by the facts affirmatively appearing on its face. Where facts constituting a bar of former adjudication so appear, the question may be raised by general demurrer. *Seattle National Bank v. School District No. 40,* 20 Wash. 368, 55 Pac. 317.

On the effect of the prior action as *res judicata* of the issues in this action, see: *Olson v. Title Trust Co.,* 58 Wash. 599, 109 Pac. 49; *Perlus v. Silver,* 71 Wash. 338, 128 Pac. 661; *Crandall v. Iten,* 128 Wash. 277, 222 Pac. 894; *State ex rel. Paine v. Glover,* 165 Wash. 567, 5 P. (2d) 1014.

It is also almost universally settled that the

fact that the vendor, upon default of the vendee, has enforced a forfeiture provision in a contract, does not render him liable to account to the vendee for the amount the latter has paid on the purchase price. *Thiel v. Miller, supra.* See annotations to 59 A. L. R., *supra,* commencing at 202.

We agree with the trial court that the former action was not one to rescind the contract in any sense, except to terminate it for the future. It was not an action, as the complaint disclosed, to annul the contract from the beginning, in which case appellants would have been entitled to payments theretofore made on the contract.

*Jones v. Grove,* 76 Wash. 19, 135 Pac. 488, strongly relied upon by appellants, is differentiated from this by the fact that, in that case, there was no forfeiture clause, and that there was a rescission declared by the vendor, admitted by the vendee, and no further claim made for the property. *Gibson v. Rouse,* 81 Wash. 102, 142 Pac. 464, another case relied upon by appellant, was one where the vendors attempted to rescind the contracts by withdrawing them from escrow without right, whereupon the vendee accepted such acts as a rescission on the part of the vendors and claimed the right to a return of the money paid. *Croup v. Humboldt Quartz & Placer Mining Co.,* 87 Wash. 248, 151 Pac. 493, was a similar case, only the vendor in that case was repudiating the contract, whereupon the vendee treated the contract as rescinded by the vendor and acquiesced therein, which we held constituted a mutual rescission.

*Johnson v. Alexander,* 87 Wash. 570, 151 Pac. 1121, was a case which had been tried on issues of fact and of law, where the allegation in the complaint that the contract had been rescinded was denied, and at the opening of the trial, it was stated by counsel for the

vendee, appellant in that case, that the defense would be that the contract had been forfeited for the defaults in payment, whereupon the trial proceeded. It was held that appellant, the vendee, was deprived of opportunity to set up his only affirmative defense, that of forfeiture of the contract. It was there said:

"If the contract was rescinded by the appellant, the respondent would be entitled to a recovery of the purchase price, as a rescission includes the idea of restoration of both parties to their *status quo* and the return by each to the other of the consideration given and received. . . . If, however, the contract was forfeited, as asserted by the appellant, then under its terms he was entitled to retain the payments. The only defense which the appellant could plead to the allegation that he had rescinded the contract was a denial of the rescission, and an affirmative allegation that it had been forfeited instead."

We can see nothing to aid appellants in the above quoted case. Many other cases cited and quoted by appellants may be distinguished on grounds similar to those which we have hereinbefore referred to. We conclude that the judgment of the trial court must be, and is, affirmed.

Respondents, having put appellants to additional trouble and expense and delayed the business of the court by their failure to appear and serve and file briefs until the rehearing *En Banc,* will be denied any costs for printing and filing their briefs herein.

TOLMAN, C. J., PARKER, MITCHELL, MILLARD, and HERMAN, JJ., concur.

BEALS, J. (dissenting)—In their complaint in the prior action, respondents, after alleging the agreement for the sale from respondents herein to these appellants of the real property which is the basis of this action, alleged that these appellants had made default in the

payments which they were to make pursuant to the contract, and that respondents had notified appellants that, unless appellants placed the contract in good standing, respondents "would elect to cancel said contract and terminate all of defendants' rights in said property and in said contract of purchase." Respondents prayed that the "contract be declared rescinded and canceled;" that their title to the premises be quieted against appellants; and that respondents have judgment against appellants for forty dollars per month for each month of appellants' occupancy of the premises after the date upon which respondents notified appellants that the contract would be canceled.

Appellants made default in the action, and, after the introduction of evidence on the part of these respondents, a decree was entered adjudging that the contract "be and the same is hereby rescinded and canceled, and that all rights of defendants (appellants herein) as vendees under said contract are hereby terminated and ended," and quieting respondents' title as against appellants. The decree contains no provisions forfeiting to respondents the payments which appellants had made under the contract, nor referring to such payments directly or indirectly. This decree was entered at the instance of respondents, and upon their complaint, and upon the evidence which they introduced in support thereof. By the decree, the contract was "rescinded and canceled," and the rights of appellants under the contract were "terminated and ended."

In the case of *Jones v. Grove,* 76 Wash. 19, 135 Pac. 488, this court said:

"Where a contract for the sale and purchase of real estate has been rescinded, the law restores each of the parties to his original status. The vendor is entitled to the possession of the property if it has not already been restored to him, the rent if any, and damages for

the breach. The purchaser has a right to the refund of the money paid under the contract, together with interest.''

In the early case of *Ankeny v. Clark,* 1 Wash. 549, 20 Pac. 583 (relied upon in the case last cited), the rule was laid down that,

''When a contract is rescinded, it is abrogated and annulled. It is as if it had never existed, and the party seeking to recover back money paid under it proceeds, not upon the contract, for there is none, but upon the implied obligation that exists on the part of the one who received money under it to pay it back to the one from whom he received it.''

This last quotation is particularly applicable to the situation here presented, as by the decree in the prior action the rights of appellants *"under said contract"* were terminated and ended. In the case at bar, appellants are not relying on any rights under the contract, but upon rights which arose upon the rescission and cancellation of the contract as effected by the decree.

The opinion of this court in the case of *Johnson v. Alexander,* 87 Wash. 570, 151 Pac. 1121, is in point. In the course of the opinion, the court said:

''If the contract was rescinded by the appellant, the respondent would be entitled to a recovery of the purchase price, as a rescission includes the idea of restoration of both parties to their *status quo* and the return by each to the other of the consideration given and received. *Reiger v. Turley,* 151 Iowa 491, 131 N. W. 866. If, however, the contract was forfeited, as asserted by the appellant, then under its terms he was entitled to retain the payments. The only defense which the appellant could plead to the allegation that he had rescinded the contract was a denial of the rescission, and an affirmative allegation that it had been forfeited instead.''

The cases of *Connelly v. Malloy,* 106 Wash. 464, 180 Pac. 469, and *West v. Hoffman,* 139 Wash. 13, 245 Pac. 419, are to the same effect.

It must be remembered that these appellants, as defendants in the former case, were regularly served with process and made default. While it is possibly true that respondents might have declared the contract forfeited and terminated, and, upon appropriate allegations in their complaint, have procured a decree forfeiting the contract and awarding to themselves the payments made thereunder by these appellants, upon the record as made, respondents are bound by their complaint, and particularly by the decree which was entered thereunder at their request and upon evidence introduced by them.

In this connection, the opinion of this court in the case of *Bank of California v. Dyer,* 14 Wash. 279, 44 Pac. 534, is in point. In the case cited, the court quoted with approval the following rule:

" 'The relief granted to a plaintiff in a case in which there is no answer, cannot exceed that which he demands in his complaint. It is not sufficient that he states facts sufficient to entitle him to the relief; he must also ask for it. . . .' *Simonson v. Blake,* 12 Abb. Pr. 331; 2 Jones, Mortgages (5th Ed.), § 1475; *Parrott v. Den,* 34 Cal. 79; *Lamping v. Hyatt,* 27 Cal. 99."

*Long v. Eisenbeis,* 18 Wash. 423, 51 Pac. 1061, is of interest in this connection.

It nowhere appears from the record that appellants herein failed to acquiesce in the position taken by respondents, as adjudged in the decree in the prior action. In appellants' complaint in this action, it is alleged that respondents herein ejected appellants from the premises prior to the entry of the decree in the former suit. This allegation stands admitted by re-

spondents' demurrer. The decree fixed the rights and liabilities of the parties.

In my opinion, there is no escape from the proposition that, upon the record before us, it must be held that the trial court erred in overruling the demurrer to appellants' complaint, and that appellants are entitled to maintain this action, subject to respondents' right to offset against appellants' claim the reasonable value of the use and occupation of the premises and any other damages which they may lawfully prove.

I accordingly dissent from the conclusion reached by the majority.

MAIN, J., concurs with BEALS, J.

