[No. 11190. Department Two. August 23, 1913.]

L. O. WELCH et al., Respondents, v. HOVER-SCHIFFNER COMPANY, Appellant.[1]

VENDOR AND PURCHASER—CONTRACT—RIGHT TO POSSESSION. A contract for the sale of land, requiring the purchaser to keep open for public use strips reserved for roadway purposes, and to annually pay interest on deferred payments and taxes, impliedly confers upon the purchaser the right of possession.

SAME—CONTRACTS—BREACH—ACTION—PLEADING AND ISSUES. In an action for breach of a contract of sale, by the grantor's entering and retaking possession, an answer admitting that the plaintiff entered into possession under the contract, without denying his right to do so, and alleging that plaintiff negligently permitted the land to grow up into weeds, estops the defendant from raising any issue as to the plaintiff's right to possession in the first instance under the contract of sale.

SAME — CONTRACTS — BREACH — UNLAWFUL ENTRY BY GRANTOR. Where a vendee is entitled to possession under a contract of sale, an entry by the grantor, who began cultivating the land against the vendee's protest, is a breach of the contract, entitling the vendee to damages.

SAME—CONTRACTS—FORFEITURE—DEFAULT IN PAYMENT—TAXES. A forfeiture of contract for the sale of land for the default of the vendee is not warranted, where there was nothing due except for taxes, and the vendor at the time owed the vendee more than enough to pay the taxes, to be credited generally on the contract.

SAME—BREACH BY VENDOR—DAMAGES—AMOUNT PAID. Upon the breach by the grantor, of a contract to sell land, upon which was credited $325 as the agreed value of a wheat crop thereon, retained by the vendor, and $1,000 as the agreed value of lands traded in, the vendee's damages are limited to the agreed value of the lands

[1]Reported in 134 Pac. 526.

traded in as part of the purchase price, where that is all he had
parted with, and it is error to include the agreed value of the wheat
crop credited on the initial payment.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered November 21, 1912, upon find-
ings in favor of the plaintiffs, in an action on contract, tried
to the court. Modified.

*A. G. Elston* and *A. E. Gallagher*, for appellant.

*W. H. Plummer* and *Henry Jackson Darby*, for respond-
ents.

Morris, J.—Action to recover damages for breach of a
contract for the purchase and sale of real estate. Recovery
by plaintiffs, and defendant appeals. The contract was dated
July 2d, 1910, and provided for the sale to respondents by
appellant of ten acres of agricultural lands in Spokane
county. Of this amount, $1,320 was accounted for at the
time, made up of two items, some city property accepted by
appellant as part payment at an agreed value of $1,000,
and $320 as the value of the wheat crop then growing on the
land. The balance was to be paid as follows: $715 on or be-
fore July 2, 1915, and $715 on or before July 2, 1920, with
interest at 7 per cent per annum on deferred payments. Re-
spondents were to pay all taxes, including those of 1910, be-
fore same became due. Time was made of the essence, and for-
feiture was provided for in case of any default.

All of the findings of fact made by the lower court were
excepted to and are here urged as error. The errors may,
however, all be united under three heads. (1) That the re-
spondents were not entitled to possession of the land. (2)
That appellant did not unlawfully and forcibly take posses-
sion of the land between June 10th and 20th, 1911. (3)
That respondents were in default.

Upon the first point, it was strongly urged that the re-
spondents were not entitled to possession of the land. It is
not questioned but that they were in possession, and had

been since the making of the contract; but appellant urges
that the contract is silent as to the right of possession, and
that, as a matter of law, there is no right of possession secured
under a contract for the purchase and sale of real estate be-
fore conveyance unless so stipulated in the contract.   As a
general statement of the law, this may be admitted; but it will
also be found that the authorities agree that the contract
may confer a right of possession, either in express terms or
by implication (39 Cyc. 1621) and that the contract will be
read as providing for possession by the vendee when he is
by its terms required to do something the performance of
which requires possession.   One of the provisions of the
contract in suit excepts from the description of the land two
strips on two sides of the land, "which is reserved for road-
way purposes which the purchaser agrees to keep open for
public use."   This provision can be read in no other way than
providing for yielding the possession to the purchaser.   If
the vendor was to remain in possession, there would be no
necessity for this stipulation, since it could keep the road-
way open without any assistance from the vendee.   This
duty, however, is assumed by the vendee, and strongly indi-
cates to us that the vendee was to be in possession.   The con-
tract also provides for the payment of annual interest and
taxes, in default of which the vendor may declare a forfeiture.
These provisions have been held to imply right of possession
in the vendee.   *Olson v. Minnesota & N. W. R. Co.*, 89 Minn.
280, 94 N. W. 871; *Krakow v. Wille*, 125 Wis. 284, 103 N.
W. 1121.

Equity, unless forced by the strong language of the con-
tract, would not hold that a vendee who assumes burdens of
this character is not entitled to possession of the land.   It
seems to us, also, that this issue was resolved in favor of the
respondents by the pleadings.   The complaint alleged that,
immediately after the execution of the contract, the appel-
lant delivered the possession of the land to respondents and
respondents commenced to make certain improvements.   The

answer denied this allegation, "except that plaintiff entered into possession of certain lands which is hereby admitted." An affirmative defense is then pleaded in which it is alleged that plaintiff negligently permitted the land to grow up to weeds, and defendant was compelled to employ men to plow the land in order to keep it and the surrounding country from becoming foul. No suggestion is made but that this admitted possession of the respondents was rightful under the contract, and the charge that respondents negligently permitted the land to grow up to weeds can hardly be sustained unless it was their duty to keep the land free from weeds, a duty which could not be performed without possession; and since the respective duties of the parties arise out of the contract, respondents would not violate any duty under the contract, with respect to doing or neglecting to do something with the land, unless the contract either expressly or impliedly so provided; and it follows that this allegation of the affirmative defense must be based upon the theory that respondents were in possession of the land under the contract, and having alleged at least an implied right of possession, appellant should not now be permitted to assert that respondents were not entitled to the possession of the land. We are therefore of the opinion that upon this point the lower court should be sustained.

It is not questioned but that, about the middle of June, 1911, appellant entered upon the land and began tilling and cultivating it. This was against the protest of the respondents; and respondents being entitled to possession, was also against their right. Such an entry was therefore unlawful and was a breach of the contract.

The third finding to which appellant takes exception is that at this time respondents were not in default. The evidence sustains this finding. The only payments respondents were required to make in 1911 were the taxes of 1910, and the annual interest on the deferred payments. The taxes amounted to $7.87, and were due and payable any time prior to May 31st. Respondents were only required, however, to

pay one-half of this amount prior to May 31st to prevent delinquency, paying the remainder prior to November 30th. It is admitted that, some time in the fall of 1910, Welch performed some labor for appellant upon which there was due at least the sum of $20, which sum the court finds appellant had in its hands to be credited generally on the contract. There is no evidence that this amount was ever paid to Welch, and we think the lower court was justified in holding that appellant had sufficient money in its possession which it was to apply in furtherance of the contract to meet all dues for taxes of 1910, and that appellant was not justified in its entry upon the land under any claim of a default in the payment of taxes. The interest was not due until July 2d, so that its nonpayment could not be made a justification for any entry of appellant in June.

We find one contention of appellant that in our opinion must be sustained, and that is, the lower court erroneously awarded respondents the sum of $320, the agreed price of the wheat crop on the land. This crop added its valuation to the sum fixed as the price of the land, which respondents, in the absence of any contrary stipulation, would have been required to pay. Appellant preferred the crop to the added value and agreed to take it at a valuation of $320, thus giving respondents credit on the initial payment, but a credit which represented nothing but a matter of accounting, since the agreement virtually was that respondents were to purchase the land without the wheat crop and to pay only for the valuation agreed upon less the value of the wheat. The only thing respondents parted with in payment of the land was the Spokane property valued at $1,000, and under the theory of damages as prayed for, this was all that respondents were in law entitled to receive.

The judgment is modified by reducing the amount of recovery to $1,000, and as so modified will stand as the proper judgment. Costs to appellant.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.