[No. 24039.   Department Two.   January 25, 1933.]

AGNES HANSEN, *Respondent*, v. EDLEF H. AHRENS, *Appellant*.[1]

*Allen, Froude, Hilen & Askren,* for appellant.
*Vanderveer & Bassett,* for respondent.

BEALS, C. J.—For some time prior to April 1, 1926, defendant was the owner of a portion of lot 3, block 16, A. A. Denny's Third Addition to the city of Seattle. The tract in question has a frontage of sixty feet on the west side of Sixth avenue between University and Union streets. It maintains its width for sixty feet back from the street, and from thence to the

[1]Reported in 18 P. (2d) 43.

alley is thirty-five feet wide. The narrower portion of the lot was improved with a brick building, the front portion with two frame houses approximately ten feet apart, the northerly house being about the same distance from the north boundary of the lot.

April 1, 1926, the defendant leased the property for a term of fifty years to Axel C. Hansen, who died very soon after the consummation of the deal; his widow, the plaintiff in this action, succeeding to her husband's interest in the lease. This instrument contains the following provisions:

"(10)  On or before five (5) years from the date of execution of this lease, the lessee shall construct and fully complete on said premises a masonry, brick or concrete building of at least two (2) stories in height with the foundation and walls adequate to carry six (6) stories, all at the cost and expense of the Lessee.

"(11)  That the lessee shall not tear down, destroy or remove any building upon the demised premises until he shall have prepared plans and specifications for the erection of another in its place in accordance with Section 10 of this lease and submitted such plans and specifications to Lessor together with satisfactory evidence of the proper and sufficient financing of said construction and that he will proceed diligently with such construction. Upon furnishing such evidence, the Lessor shall give his consent to the tearing down of any such building or buildings.

"(12)  As a further consideration for the execution of this lease the Lessee has concurrently herewith, executed and delivered to the Lessor a promissory note for Ten Thousand Dollars ($10,000) payable on or before five years after the date hereof without interest until maturity but with interest after maturity (accelerated or otherwise), at the rate of seven per cent. per annum and as security therefor a mortgage on Lot Eight (8), Block Fifteen (15) of J. H. Nagle's addition to the city of Seattle, Washington. . . . Although it is expressly agreed that the

said note and mortgage (or the cash payment thereof if made as aforesaid) are in present unqualified part consideration for the execution of this lease, the lessor, nevertheless, agrees that in the event, but in the event only, that the Lessee shall fully and faithfully pay the rent at the times and in the manner herein provided for, and shall also perform each and every term, condition and covenant upon his part to be performed hereunder, during the first five (5) years of this lease, and shall also within five years from the date of the execution of this lease completely construct upon the demised premises a building as in Paragraph 10 hereof provided, and pay all labor, materialmen and all other bills in connection with such building (or satisfactorily provide for the payment of such bills), then upon the expiration of said five year period the Lessor will . . . cancel said note and mortgage . . . It is understood and agreed, however, that should this lease be terminated at any time prior to the expiration of said five (5) year period by reason of any default in payment of rent or in the performance of any term, condition or covenant upon the part of the lessee to be performed, then in any such event all rights of the lessee to said note and mortgage or to said $10,000 if paid, under the provisions of this paragraph 12 shall wholly cease and terminate and the Lessor shall be entitled immediately to declare said note and mortgage due and payable and to enforce payment thereof or to retain the said sum of Ten Thousand Dollars ($10,000), if the sum has been paid wholly discharged from any obligations under this paragraph 12."

Mr. Hansen went into possession under the lease, and plaintiff, as his successor in interest, apparently maintained the same in good standing up to October 1, 1930. On the 13th of that month, the northerly of the two houses, fronting on Sixth avenue, was so damaged by fire that its repair was impracticable. Presumably in compliance with the terms of paragraph 10 of the lease, *supra*, plaintiff, during the

month of November following the fire, submitted to defendant plans for a proposed structure to be erected on the site of the dwelling which had been destroyed. Plaintiff requested defendant to signify his approval of these plans, which he refused to do. At this time, plaintiff was in default in the payment of rent for the month of October, and had been notified by defendant, under date of November fifth, that, unless the rent due was paid within sixty days, the lease would be terminated.

After considerable negotiation between counsel for the respective parties in regard to the plans which plaintiff had prepared and submitted to defendant, defendant's counsel wrote plaintiff's attorney a letter containing the following:

"We did not state that we refused to approve the plans on the single ground that the proposed building did not comply with the requirements of sections 10 and 11 of the lease, but on the contrary specifically stated that no proposal had been received by us or by Mr. Ahrens, so far as we knew, from Mrs. Hansen, the terms of which complied with the requirements of the lease. We did state unequivocally that a building 14 x 18 feet, as suggested, did not in our opinion conform to the requirements of the lease, but we did not state, and certainly gave you no cause to understand, that this was the only defect. . . . In view of the foregoing we state unequivocally, on behalf of Mr. Ahrens, that the proposal submitted, that is to say, that the proposal we have above referred to, is rejected."

No agreement having been reached, under date December 20th, plaintiff, being of the opinion that defendant's conduct constituted a breach of the lease, notified the defendant that she elected to rescind and cancel the same. This action was instituted shortly thereafter for the purpose of recovering damages which plaintiff alleged she had suffered by reason of

defendant's acts. By way of cross-complaint, defendant sued plaintiff for rent which he claimed was due under the lease, together with an amount equal to the last half of the taxes for the year 1929, which, under the lease, plaintiff was obligated to pay; defendant also asking for judgment on the ten thousand dollar note referred to in the lease and for foreclosure of the mortgage securing the same, all as described in paragraph 12 of the lease above quoted. The trial resulted in judgment dismissing both plaintiff's complaint and defendant's cross-complaint, from which judgment defendant appeals.

Appellant assigns error upon the dismissal of his cross-complaint and upon the refusal of the trial court to enter judgment in his favor upon the promissory note, together with a decree foreclosing the mortgage given to secure the same.

Respondent's action is based upon the theory that appellant, by refusing to approve the plan of the proposed structure which respondent stated she was willing to erect upon the site of the house which had been destroyed by fire, in some manner failed to comply with an obligation imposed upon him by the portion of the lease above quoted. Appellant argues that, under the lease and in view of the circumstances of the case, respondent was not required to submit to appellant plans and specifications concerning the improvements which she desired to place upon the property.

In this connection, it must be remembered that it was not proposed to destroy any existing building; the fire had taken care of that. Respondent's plan involved no more than the erection of a structure which should take the place of the one which had already been destroyed. Respondent's obligation to submit to appellant her plan for financing the im-

provement is another and a different matter. An examination of the record convinces us that, under the circumstances as they developed, appellant's consent was not a prerequisite to the erection of a new building which should take the place of the one destroyed. Appellant's obligation, of course, was correlative with and no greater than his right.

If, however, it should be assumed that appellant's approval of respondent's proposal was necessary, his refusal to give his consent would not constitute a breach of any obligation on his part unless his consent was unreasonably withheld.

The plan which respondent suggested contemplated the erection of a structure sixteen by eighteen feet outside measurements, two stories high, upon foundations capable of carrying a structure six stories in height. The inside measurements of this unique bit of construction were to be thirteen by sixteen feet, out of which space would be taken for stairways and lavatories. No specifications or estimate of cost accompanied the plans. No evidence of adequate financing was submitted, other than the mere assertion on behalf of respondent that the necessary amount of money had been provided for. At the time this scheme was submitted, it must be remembered that respondent was behind in her rent, and had failed to pay taxes against the property which, under the lease, she was required to pay.

Much of the testimony in the case was on the question of whether or not the proposed plans conformed to the provisions of paragraph 10 of the lease. Respondent's theory was that the structure was the first unit of a building which eventually should occupy the entire Sixth avenue frontage, leaving space in the rear for the erection of a garage to be used in connection with another garage which it was supposed

might sometime be built by the owners of the property lying immediately to the south of the lot covered by the lease; which garages, it was argued, might be profitably operated in connection with the building occupied by the Washington Athletic Club immediately to the north of the property with which we are here concerned. It is apparent that these matters were all, in their nature, highly speculative, no definite arrangements having been adopted calling for the erection of any such buildings.

We are satisfied that the structure suggested by respondent was not a practical improvement, and constituted no reasonable compliance with the obligation imposed upon respondent by the lease. The record contains no credible testimony to the effect that this so-called first unit could have any commercial value commensurate with its cost. We are satisfied that it cannot be held that the plan submitted constituted a bona fide attempt to comply with the portions of the lease above quoted. Appellant was justified in refusing to approve any such scheme, assuming that the plans were subject to approval or rejection by him.

At the time respondent sought to rescind and cancel the lease, she herself was in default thereunder, and under these circumstances was not entitled to declare a rescission. *Reddish v. Smith*, 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Palmer v. Washington Securities Inv. Co.*, 43 Wash. 451, 86 Pac. 640.

We are of the opinion that appellant's refusal to approve the plans submitted by respondent was, under the circumstances, entirely justified, and that the record shows no breach by appellant of any obligation imposed upon him by the terms of the agreement between the parties.

The judgment appealed from is reversed, with directions to proceed in accordance with this opinion.

TOLMAN, MAIN, and STEINERT, JJ., concur.