[No. 24503.   Department Two.   June 21, 1933.]

GEORGE EBERHART, *Appellant,* v. A. H. LIND *et al.,*
*Respondents.*[1]

*John W. Heal, Jr.,* for appellant.
*Jay C. Allen,* for respondents Rosaia *et al.*
*Julius L. Baldwin,* for respondents Lind *et al.*

[1]Reported in 23 P. (2d) 17.

STEINERT, J.—This is an action to rescind a real estate contract and the subsequent assignment thereof to plaintiff, as vendee, and to recover the purchase price paid thereon. Demurrers to the second amended complaint having been sustained, and plaintiff having elected to stand on his pleading, a judgment of dismissal was entered, from which plaintiff appeals.

According to the complaint as finally amended and the exhibits thereto attached, on which we must rely for a statement of the facts, respondents Rosaia were, on May 2, 1930, the owners of two lots of ground located in the vicinity of what is referred to as the Aurora avenue bridge, in Seattle. On that day, the Rosaias and one H. F. Jones entered into a written agreement by the terms of which the former agreed to sell, and the latter agreed to purchase, the property for thirty-five hundred dollars, payable five hundred dollars in cash, which was then and there receipted for, and the balance in installments of two hundred and fifty dollars, to be paid on or before each six months from date of the contract. Upon completion of full payment, the property was to be conveyed by warranty deed as of date *May 2, 1930*. The contract contained the usual forfeiture clause for failure by vendee to make payment or to perform any of the covenants or conditions therein contained.

On the same day, that is, May 2, 1930, Jones, by written assignment, sold and transferred his interest in the contract, and in the land described therein, to respondent A. H. Lind. Four days later, on May 6, 1930, respondents Lind, by a similar assignment, sold and transferred their interest in the contract and land to appellant.

Prior to the execution of the original contract between the Rosaias and Jones, it appears that Scott-Poor, Inc., a real estate firm, had negotiated with the

appellant for the purchase by him of the property, and on April 29, 1930, an instrument denominated "Revised form of earnest money receipt adopted by the Seattle Real Estate Board," was signed by appellant as purchaser of the property and by Scott-Poor, Inc., as agent (its principal not being designated). According to that instrument so signed, the property involved herein was to be purchased by appellant for forty-five hundred dollars, of which two hundred and fifty dollars was then paid, with a further sum of twelve hundred and fifty dollars additional cash to be paid on showing of good title, and the balance of three thousand dollars to be paid by the assumption of the original contract between the Rosaias and Jones. Title was to be shown by title insurance policy certified to April 29, 1930, the date of the instrument just referred to, and the property was to be conveyed "by assignment of contract for warranty deed free and clear of all encumbrances." The sale was to be consummated in the office of the real estate agent.

The balance of the initial cash payment of fifteen hundred dollars was fully paid by Eberhart by May 6, 1930, and thereafter, on May 16, 1930, the real estate firm filed for record the original contract and the successive assignments. The filings, however, it is alleged, were without the knowledge of the appellant.

The first deferred installment under the original contract became due November 2, 1930. Appellant did not pay, or offer to pay, the amount then falling due. Neither did the Rosaias forfeit the contract for nonpayment. The reason assigned by the appellant in his complaint for his failure to make the payment is contained in the following allegation:

"That on or about the 2nd day of November, 1930, it had become general knowledge in the city of Seattle, and in particular to the defendants herein, and of the

plaintiff, that the city of Seattle was then taking steps to condemn said above described property for the purpose of constructing what is known as the Aurora bridge, and thereupon it had become apparent to the plaintiff that the defendants, Rosaia, would not be in a position to convey the lands above described or to comply with their contract of sale; and that plaintiff's offer to make said payment of Two Hundred and Fifty Dollars ($250), would have been a useless ceremony and therefore he did not make the payment.''

It is then alleged that thereafter, on November 18, 1930, the city actually did condemn the property. What the amount of the condemnation award was, we are not advised, nor is it indicated when the judgment in that case was entered. The appellant brought this action against respondents Rosaia and Lind upon the theory of total failure of consideration to the appellant by virtue of the condemnation of the property. He now seeks to recover from respondents the fifteen hundred dollars paid by him to Lind.

We take up, first, the case against the Rosaias.

This action is one of rescission. It is apparent that, at the time of the commencement of the action, appellant was himself in default. It is a well-settled rule that a party in default can not maintain an action of rescission without first tendering performance, or showing a willingness to perform, or else clearly establishing such facts as would excuse performance by him. *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781; *Palmer v. Washington Securities Investment Co.,* 43 Wash. 451, 86 Pac. 640; *Hansen v. Ahrens,* 171 Wash. 500, 18 P. (2d) 43.

There was no offer to perform, or willingness to perform, alleged in the complaint. Appellant's only excuse for non-performance was that, on November 2, 1930, it had become a matter of general knowledge in the city of Seattle, and in particular to the parties

herein, that the city was taking steps to condemn the property, and that therefore it was apparent that the land could not ultimately be conveyed to appellant. The land had not then been condemned, and, giving the pleading the most liberal construction, condemnation did not actually take place until November 18, 1930.

If the appellant had paid the Rosaias the full purchase price to be paid by him before the amount of the award had been drawn down, as the appellant had the right to do under the terms of the contract, he would, at the proper time, have been entitled to the award in the condemnation proceeding. If he did not care to do that, he could then have permitted the vendor to draw down the amount of the award and have it applied to the purchase price, so that, when the vendor had been fully paid, he would have been required to deliver to appellant a deed according to the terms of the original contract. In the face of this, however, appellant waited until September, 1931, almost ten months later, before giving notice that he elected to rescind the contract and require the return of his money. If it was apparent to appellant on November 2, 1930, that, because of the condemnation proceedings, the Rosaias would not be able to perform, it was his duty to make his election promptly, and not to speculate upon the outcome of the condemnation proceedings or the amount of the award that might be obtained therein.

But there is a stronger reason why appellant can not prevail in his action against the Rosaias. In the original contract between the Rosaias and Jones, it was expressly provided that the property was to be conveyed by warranty deed as of date May 2, 1930, which was the date of the contract. There is no contention that the Rosaias did not have good title to the property at that time, free and clear of all encumbrances. As we said in *Ashford v. Reese,* 132 Wash.

649, 233 Pac. 29, the parties, knowing the rule with reference to the rights of the respective parties under an executory contract of sale of real estate, may protect themselves with reference to loss, by express provision in the contract. That is exactly what the Rosaias did in their contract with Jones. They agreed to give good title as of date of the contract. When parties have definitely agreed to such terms, as here, then neither the vendee nor the courts have the right to impose more burdensome terms upon the vendor.

As to the action against the Linds, what we have already said concerning the Rosaias applies with equal force in their favor. There is an added reason, however, why recovery can not be had against them. By their agreement with appellant, the Linds obligated themselves to do nothing more than to assign and transfer their interest in the contract and the land. described therein, subject to all the terms and conditions expressed in the original contract. This they did. So far as the contract between the Linds and appellant is concerned, it was an executed contract, and therefore could not, in the absence of fraud, be rescinded for failure of consideration. *Decker v. Schulze,* 11 Wash. 47, 39 Pac. 261, 48 Am. St. 858, 27 L. R. A. 335; *Carrier v. Eastis,* 112 Ala. 474, 20 So. 595; *Condrey v. West,* 11 Ill. 146; *Kleinman v. Strassburg,* 189 N. Y. S. 633; 39 Cyc. 2009.

Appellant contends that, by the terms of the earnest money receipt, the Linds agreed not only to make conveyance by assignment of the contract, but also to sell the land. We have already indicated that the earnest money receipt was never signed by the Linds. But, assuming that it was signed by their agent, nevertheless it discloses upon its face that, so far as they were concerned, they were to convey the

property merely by assigning the contract which they then held. This they did, and appellant accepted it, paying the balance of the initial cash payment. If the condemnation of the property was then in contemplation of the parties, appellant assumed the risk of loss under the terms of the agreement. If condemnation was not then in contemplation, it was still a contingency against which the contract provided. In either event, appellant took the chance of realizing a profit by virtue of what amounted to a sale to the city. He likewise ran the risk of loss incident thereto.

The judgment is in all respects affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.