[No. 25656. Department One. September 24, 1935.]

JOHN VAN KEULEN *et al., Respondents and Cross-appellants,* v. TORVIG SEALANDER *et al., Appellants.*[1]

*Bonsted & Nichoson* and *N. J. Benoit,* for appellants.

*H. A. LaBerge,* for respondents and cross-appellants.

GERAGHTY, J.—In December, 1929, the respondent purchased a five-acre tract of orchard land from the appellant. The purchase price was ninety-two hundred dollars, of which sum four thousand dollars was paid in cash, the balance being payable in annual installments, with interest. The contract provided for payment by the purchaser of taxes and water assessments before delinquency and for the forfeiture by him of any payments made upon the contract in the

[1]Reported in 49 P. (2d) 19.

event of his failure to pay any installment of principal, interest, or the taxes or other charges assessed, assumed by the purchaser.

The respondent entered into possession of the tract, which was highly improved, in March, 1930. He remained in possession until February, 1933, and harvested the crops of fruit grown upon the orchard in the years 1930, 1931 and 1932. He paid the installment of principal and interest due in 1931. In the summer of 1932, he was in default for principal and interest payments and had suffered general taxes and water assessments to become delinquent.

The respondent testified that he attempted to secure a loan from his father out of funds held in trust in a guardianship estate, but owing to legal objection, the loan could not be obtained from that source. Later, he consulted his attorney, who advised him to turn the land over to the appellant. February 17, 1933, he called at the home of appellant, intending, as he testified, to notify him that he was giving up the ranch. He was advised that appellant was sick in bed and did not see him on that occasion. February 21st, he called appellant on the telephone and advised him that he was going to turn the place back because it had been misrepresented to him at the time of the purchase; that he was not going to carry out the contract and would give appellant a quitclaim deed in a few days. To this, appellant replied, "All right, you may be the loser." He testified that, when speaking to the appellant over the telephone, he did not make any demand to have his money back.

The following day, the appellant came to the ranch, when he was again told by respondent that he was going to throw the place up. Respondent did not ask appellant on either of these occasions for the return of the purchase money. He did not make any demand

for the purchase price until the 21st of April. He testified that, in the transaction, he was acting on the advice of his attorney, who had cautioned him to keep to himself what he had been told to do.

He finished the removal of his belongings from the place on February 24th, and on that day delivered the keys of the house to the appellant. The last night on which he occupied the house was February 21st.

The respondent executed a quitclaim deed, which was mailed to the appellant by respondent's attorneys and received on February 23, 1933. The deed contained this recital:

"This deed is given in cancellation and rescission of that certain executory real estate contract made and entered into on the 31st day of December, 1929, between the grantees herein as vendors and said John Van Keulen as vendee."

Quoting respondent's testimony from the abstract:

"I saw Sealander again the next day, the 23rd of February. Sealander told my brother that he had tried to get me to stay on the place and that I wouldn't do it, and my brother said to him, 'Well,' he says, 'You have two daughters growing up, you can give the place to one of them.' I was getting boxes out of the packing shed and heard the conversation. I did not ask him for any money that day. Then later I went down to his house with the keys to the place. I delivered the keys the 24th of February, about 11:00 o'clock in the forenoon and said to him, 'Mr. Sealander here's the keys to the house.' He says, 'Is this the last load?' and I says 'Yes.' . . . I didn't say to him on that day that I wanted him to give me some money. I gave him the keys on the 24th of February and left. I waited until the 21st of April before I said anything about money. That was when I saw him in Selah, or about two months. Mr. LaBerge told me to go to him and tell him that he could settle it out of court—offer him a settlement

out of court. . . . I was going according to the instructions of Mr. LaBerge when I waited that long before I did anything about it."

The respondent's sister testified that she heard respondent's conversation with appellant over the telephone on February 21st, and heard him tell the appellant that the orchard had been misrepresented.

The appellant testified that, upon their receipt, he read the letter inclosing the quitclaim deed, as well as the deed, and left them on the top of his bureau, where they remained until May, 1933, when he returned the deed to respondent. This was after the commencement of the suit. The deed was not recorded.

The case was tried to the court, without a jury, and resulted in a judgment in favor of the respondent for the purchase money paid by him, with other expenses incurred, less a charge of two thousand dollars against the respondent for the use of the premises. The appellant appeals from the judgment and the respondent cross-appeals from the allowance to the appellant of two thousand dollars for the use of the premises, contending that the credit should not exceed one thousand dollars.

In the complaint, the respondent alleged he was induced to purchase through fraudulent misrepresentations made by the appellant, and sought rescission of the contract upon the ground of fraud, as well as alleging that there had been a mutual rescission.

The trial court found, and its finding is fully sustained by the record, that there was no fraud on the part of appellant, but reached the conclusion that there was a mutual rescission by the parties of the executory contract of purchase, entitling the respondent to recover.

■ The case before us is not one where rescission is granted for breach of the contract by one of the parties. If there was such mutual rescission as would entitle the respondent to recover the purchase money, it could only be by agreement of the parties. Such an agreement might be in parol or in writing. The agreement here contended for by respondent was admittedly not in writing. If it exists, it must be inferred from the conversations and actions of the parties, taken in connection with the mailing and receipt of the quitclaim deed. The receipt by the appellant of the deed and its retention for three months, in the manner testified to, would not, of itself, be sufficient to establish a mutual rescission. *Roethemeyer v. Milton,* 177 Wash. 650, 33 P. (2d) 99. We are equally clear that the conversations had between the parties would not, of themselves, be sufficient to establish a mutual agreement.

The trial court was of the opinion that the notification by the respondent of his purpose to abandon the contract, the receipt of the quitclaim deed, coupled with the assumption of possession by the appellant, established a contract of rescission, implying as its consequence the obligation on the part of appellant to repay the purchase price. The court was of the opinion that the delivery of possession by the respondent and its acceptance by appellant distinguished the case from *Roethemeyer v. Milton, supra.* In that case, the vendee, acting upon the advice of the same attorney who advised the respondent here, mailed to the vendor a letter of transmittal, saying:

" 'Enclosed please find quitclaim deed from Ferdinand Roethemeyer and wife to yourself covering Lots 4, 13 and 25 of Parker Heights Orchard Tracts No. 2, Yakima, Washington.' "

The deed itself contained the words:

" 'This deed is given to surrender and rescind contract between the parties hereto for the purchase of the above described real estate, dated June 2, 1930.' "

Commenting upon the facts, we said:

"It is clear that the respondents, who had defaulted in payment of one installment and other charges, desired release from their contractual obligations. However, they were never frank with their vendor. It is apparent that the stealthy means employed by respondents were intended to effect their release from their contractual obligations, and their further purpose was to compel the appellant to return to respondents what the latter had paid on the purchase price."

This quotation may, with justice, be used to characterize the steps taken by respondent in the present case. Continuing, the court said:

"The quitclaim deed constituted nothing more than an offer to 'surrender and rescind contract between the parties.' To that offer appellant made no reply, oral or written; he remained silent. Though he retained the deed, unrecorded, for a short period of time, appellant never resumed possession of, or exercised dominion over, the land. The retention of the unrecorded deed would not, of itself alone, be sufficient to constitute acceptance of the offer to rescind. He was under no obligation to return the deed. The law did not impose upon him the duty of making any reply to the offer. It was essential to the conversion of the offer into a contract that appellant's acceptance be communicated to the respondents. We are committed to the rule that silence does not constitute an acceptance of an offer to enter into such a contract as that proposed by respondents to appellant."

In the above quotation, the court refers to the fact that appellant never resumed possession or exercised dominion over the land. In the instant case, the appellant did take possession of the land on its abandonment by the respondent, but we think this posses-

sion cannot be said to have been taken under the quit-claim deed, or in recognition of the rescission of the contract attempted to be made by the deed. As we have seen, the respondent had notified appellant of his purpose to abandon the land several days before the receipt of the deed. He had effected a practical abandonment by the removal of most of his personal property before the receipt of the deed, his last night upon the ranch being the 21st of February.

It must be borne in mind, too, that the ranch which respondent abandoned in midwinter was not an ordinary tract of land, but a highly developed orchard, with a valuable house and other improvements requiring immediate care and attention. The orchard would require pruning and other seasonal work if it was to bear a crop the succeeding summer.

In appraising the negotiations and determining whether they amounted to a mutual rescission, the existing relations of the parties must be considered. The respondent being in admitted default not only in the payment due upon the purchase price and interest, but for taxes and water assessments as well, the appellant could, on notice, terminate the contract and retain as liquidated damages all that had been paid. It should require more than a mere inference to charge appellant with a purpose to forego his rights under the contract and assume the heavy financial liability that would result from a mutual rescission in the sense contended for by respondent. The respondent desired to escape from a bargain that had soured on his hands, and, under the coaching of his attorney, employed ''the stealthy means'' intended to effect a release from his obligation.

In the language of an early case,

''It is a proverbial principle that a man is not permitted, in a court of justice, to take advantage of his

own wrong or neglect. The principle is founded in the highest reason. If a man, after he has made a fair contract, and partially fulfilled it, may, without the consent, or any fault, on the part of him with whom he has contracted, rescind the agreement, excuse himself at once from all further concern about it, and recover back whatever he has paid, he may speculate and disappoint and injure his neighbor whenever his interest or his passion may dictate; and thus triumph over him in security and enjoy, himself, a complete indemnity. Justice will not sanction such a proceeding. The cases in which one of the parties to a contract may lawfully disaffirm and rescind it, are those in which the other party has been in fault, or where, by the terms of the contract, a right to rescind it is reserved." *Rounds v. Baxter,* 4 Me. 454.

If the transaction stood alone without the circumstances of the mailing of the quitclaim deed and its receipt by appellant, it could not be contended with any show of plausibility that the conduct of the parties evidenced a mutual rescission of the contract. The respondent having abandoned the land and thrown it back upon the possession of appellant, he was under a moral, if not a legal, obligation to clear the title by quitclaim deed. The deed was not necessary to convey title to appellant, because he had not parted with it. But without the quitclaim deed, the contract, if recorded or even if outstanding subject to recordation, could cloud the title, and doubtless, if the appellant gave the form of the instrument any thought, he assumed that this was the purpose of the deed.

It is not necessary for us to follow the argument of counsel on either side as to the import of the word "rescission." In *Lea v. Young,* 168 Wash. 496, 12 P. (2d) 601, where the meaning of the word was in-

volved, this court quoted and adopted the opinion of the trial court, where it is said:

" 'I am satisfied that the word was used not in a technical sense, but in the sense of terminating the contract.' "

In that case, the facts were that the vendor had, in another action, secured a judgment rescinding the contract for breach of its conditions by the vendee. After entry of this judgment, the vendee sought to recover the purchase price upon the ground that the contract had been rescinded by the court, and therefore that, as a legal consequence, he was entitled to repayment. In adopting the opinion of the trial court, we held that, even in so solemn an instrument as a judgment of the superior court, the use of the word "rescind" did not always imply such an abrogation of the contract *ab initio* as would impose upon the vendor the obligation to restore the payments made upon the purchase price.

No doubt, the attorney for the respondent, in the preparation of the deed, used the word advisedly, intending its full measure of consequence to the appellant. But it would be doing violence to human experience to assume that appellant accepted the deed in any such sense.

The judgment is reversed, and the cause remanded to the trial court with instruction to dismiss.

MAIN, TOLMAN, BLAKE, and BEALS, JJ., concur.