[No. 29894.   Department One.   July 18, 1946.]

WALTER V. KOLOSOFF, *Respondent*, v. LAURI N. TURRI *et al.,*
*Appellants.*[1]

*Frank Harrington,* for appellants.

*Hyland, Elvidge & Alvord,* for respondent.

MALLERY, J.—On April 23, 1945, Lauri N. Turri and Mary W. Turri signed an earnest money receipt, as owners, agreeing to sell their equity in the Normandy Arms apartment, located in Seattle, Washington.  W. V. Kolosoff had previously made a down payment of fifteen hundred dollars and signed the earnest money receipt after negotiation for the purchase of the property through Walter Gratias, a real estate broker of Seattle with whom the property had been

[1]Reported in 171 P. (2d) 234.

listed for sale. Among other things, the earnest money receipt provided that:

*"Owner shall furnish purchaser as soon as procurable and within 30 days* of date of acceptance of this offer, Puget Sound Title Company's policy of title insurance or its title report evidencing condition of title.

"If title is not insurable and cannot be made insurable within 30 days from date of title report, earnest money shall be refunded and all rights of purchaser terminated, except that purchaser may waive defects and elect to purchase. But if title is good and purchaser neglects or refuses to complete purchase, the earnest money may, at seller's option, be forfeited as liquidated damages." (Italics ours.)

The earnest money receipt further provides that the agent shall not be responsible for delivery of title, and that the property is to be conveyed by contract for warranty deed. It also states:

"The sale shall be closed in office of agent within 45 days after title insurance policy or title insurance company's report is furnished by owner. The purchaser and the seller will, on demand of either, deposit in escrow with the company furnishing the evidence of title all instruments and monies necessary to complete the purchase."

On the same day, April 23, 1945, Walter Gratias, on behalf of Lauri N. Turri, ordered a title report from the Washington Title Insurance Company. The preliminary title report was delivered to the broker, Walter Gratias, on May 8 or 14, 1945. On the day of its receipt by the broker, Kolosoff was informed by telephone that it was in his office. Kolosoff said, "That's fine, thank you very much." On June 6, 1945, he mailed the following letter:

"To Lauri N. Turri and Mary W. Turri   Seattle, Washington
420 13th Avenue North                               June 6, 1945
Seattle, Washington
By the terms of the Earnest Money Receipt Agreement dated April 20, 1945 wherein I, Walter V. Kolosoff, offered to purchase from you for $55,000.00 real estate situated in King County, Washington, Lot 10, Block 11, Supplemental Plat of Frank Pontius Addition to the City of Seattle, together with furnishings and equipment necessary for its operation, you were to furnish me as soon as procurable *and within*

*30 days of date of acceptance of my offer* a title insurance policy or title report evidencing condition of title.

Inasmuch as this offer was accepted by you on April 23, 1945, and since you failed to furnish me either the title insurance policy or title report within the period specified in the Earnest Receipt Agreement, I hereby serve notice on you that I, Walter V. Kolosoff, withdraw my offer to purchase the above described premises and request that the earnest money deposit in the amount of $1,500.00 received by you from me, as indicated in the Earnest Money Receipt which I hold, be refunded to me at once and not later than June 15, 1945.

WALTER V. KOLOSOFF/s/
Walter V. Kolosoff
734 Broadway North
Apt. No. 304
Seattle, 2, Washington"

It may be here noted that Kolosoff did not demand the title report or offer to fulfill his part of the contract. Also that he purported to withdraw an offer that had already been accepted and thus ripened into a contract. The title report was at all times available at the broker's office but was not delivered to him.

In response to the above letter, Lauri N. Turri, through his counsel, on June 11, 1945, mailed a letter to Kolosoff. This letter in part reads as follows:

"I have not yet seen the earnest money receipt, but I am advised that by the terms of the receipt the earnest money is forfeited upon failure of the purchaser to complete performance on his part.

"Mr. Turri has instructed his agent, Walter Gratias, to order out the title insurance some time ago, although, as I understand it, there is no duty upon the owner to deliver title insurance until a later date. In any event, Mr. Turri can and will furnish a marketable title and is insistent upon strict performance in accordance with the terms of the earnest money receipt.

"Yours truly,
/s/ FRANK HARRINGTON"

On June 16, 1945, Kolosoff commenced this action to recover the fifteen hundred dollars paid on the contract. From a judgment in favor of the plaintiff, the defendants appeal.

█ The court, in *Lea v. Young,* 168 Wash. 496, 12 P. (2d) 601, has held as follows:

"Hence, the vendee who, without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate, cannot recover from the vendor either the amount paid on the purchase price, or a deposit by him as earnest money or as a forfeiture, where the vendor is ready, able and willing to perform his part."

Also, see *Palmer v. Washington Securities Inv. Co.,* 43 Wash. 451, 86 Pac. 640; *Ready v. Sound Inv. Co.,* 64 Wash. 422, 116 Pac. 1093; *Eberhart v. Lind,* 173 Wash. 316, 23 P. (2d) 17.

It was therefore incumbent upon respondent to show that there was a breach of contract by the appellants.

The respondent, in support of the judgment, contends:

"The seller breached his contract when he failed to furnish the purchaser with a title report or title insurance within thirty days of April 23, 1945, and particularly in this case where time is of the essence of the contract."

Counsel for respondent contends that it would seem clear that to "furnish purchaser" with evidence of title means what it says—namely, to furnish the evidence to purchaser; that it must mean to deliver or tender delivery of the paper required. He also says that appellants seem to stress a theory of bad faith on the part of respondent in not being willing to go through with the deal. He contends that the appellants were in default, and respondent exercised his legal right to elect to cancel and rescind; that the privilege of relying upon a legal right does not depend upon the motive or lack of motive, and that either the right existed or it did not.

The question in this case is limited to what constitutes "furnishing" a title report. This is well illustrated by a colloquy between the court and counsel for respondent wherein the court said:

"The court: Therefore, if it can be held as a matter of law that what he did do was a furnishing of the title report within the thirty days, that would end the case, and if he

hasn't as a matter of law furnished the title report it would end the other way. Isn't that the sole question?"

To which counsel assented.

This is a case of first instance in this state. However, in *Papin v. Goodrich*, 103 Ill. 86, the court held that, where a contract to purchase provides that the vendor is to furnish an abstract of title, and notice is given where such abstract may be found and inspected, the failure of the vendor to furnish the same, when no objection is urged at the time, will not authorize the purchaser to rescind.

Upon the question of forfeiture generally, this court said in *Palmer v. Washington Securities Inv. Co., supra:*

"It is an elementary rule of law that, to successfully insist upon the rescission of a contract for the purchase of real estate for nonperformance by the vendor, a vendee must not only be without default, *but he must also be able to show by competent evidence that he has performed the agreement upon his part or is in a position to do so, and willing to do so.* . . . Where time is made of the essence of a contract and where such contract expressly provides that, upon forfeiture by the vendee the vendor may retain all payments made under the contract, such provision is binding and the vendee cannot, after such forfeiture, recover the payments which he has theretofore made." (Italics ours.)

Both parties have discussed the case of *Frank v. E. R. Thomas Co.,* 133 Wash. 243, 233 Pac. 626. It is of no assistance to us. In that case, in the appellant's brief, page 5, it is stated:

"After repeated oral demands for an abstract or title insurance, appellant notified defendants in writing under date of April 25, 1923, that he elected to declare the contract void and demanded the return of his money."

and respondent conceded this in his brief. In the opinion, the court said:

"It appears also that Mr. McLoughlin, one of the purchasers of the property under an unrecorded contract, had died and there had been no administration of his estate, and a conversation was had between the attorneys of appellant and respondent as to whether or not the title from Mrs. McLoughlin without such administration would be accepted. This offer was properly refused. . . .

"They did not furnish or tender an abstract for the examination of appellant as provided in the contract. They merely carried on an extended conversation for four or five months without complying in any manner with their contract.

"It is the contention of respondents that they had ninety days from the receipt of written notice of any defects within which to make their title good. This provision of the contract would apply if respondents had furnished a title insurance or an abstract and given appellant the ten days within which to examine same. Having failed on their part to furnish title insurance or an abstract, they cannot insist upon having ninety days after notice of forfeiture for failure to furnish either title insurance or abstract."

While it is true that, in that case, no tender was made, the real point under consideration was that no instrument could be made available showing marketable title.

■  Webster's New International Dictionary gives as synonyms of "furnish"—to supply, to provide.

In this case, appellants did not deliver the title report. They did make it available. We think the meaning of the word "furnish" comes nearer to the word "provide" than to the word "deliver."

We therefore hold that appellants furnished the title report. It follows that there was no breach of contract that entitles respondent to recover.

The judgment is reversed.

BEALS, C. J., MILLARD, and STEINERT, JJ., concur.

SIMPSON, J., dissents.