[No. 30834. Department One. May 12, 1949.]

HARRY R. LITEL *et al.*, *Appellants*, v. PAUL K. MARSH
*et al.*, *Respondents*.[1]

[1]Reported in 206 P. (2d) 300.

*Washington & Wickwire,* for appellants.

*T. B. Southard* and *W. E. Southard,* for respondents.

MALLERY, J.—Prior to December 12, 1946, respondents Marsh, an elderly couple desirous of retiring from active business life, owned the Marsh Apartments in Grant county. At that time appellants Litel were buying a house-trailer on a conditional sales contract. After having paid $1,300 on the contract, the Litels, an impecunious couple, defaulted and were in imminent peril of having the $1,300 and the trailer forfeited by the finance company.

On December 12, 1946, Mr. Litel approached the Marshes, who were strangers to him, and urged them to buy the trailer. The Marshes had no need for one, but, on the insistence of the Litels, who were attempting to convert their trailer equity into property or cash to avoid forfeiture, they entered into a parol agreement whereby the Litels sold to the Marshes their equity in the trailer for $961, and the Marshes sold to the Litels the Marsh Apartments for $4,600. No cash changed hands in this transaction. The Marshes simply credited the price of the trailer equity as down payment on the apartments. No other payment was ever made, there being a default by the Litels on the future payments.

Before this contract was executed, the Marshes understood that the Litels would require a Federal housing loan in order to commence the payments on the contract on April 1, 1947, and to effect repairs and improvements necessary to make the apartments habitable. With this understanding, the Marshes made a full disclosure of their title,

and particularly informed the Litels of a lawsuit in which they were involved with one Bates.

The trial court found that there was no concealment or misrepresentation as to this cloud on their title. The terms of the contract required the Marshes to place a warranty deed and title insurance in escrow in a local bank so that the Litels could secure the loan contemplated. However, no date was set on which the title was to have been perfected.

On December 26, 1946, the Marshes, as they were obliged to do under the terms of the contract, paid the $1,328.16 balance to the finance company on the trailer contract and received a certificate of title. On February 1, 1947, they took possession of the trailer and have been in possession ever since. At the time of trial, the trailer was somewhat depreciated in value.

The Litels were offered possession of the apartments within one week from the date of the agreement, but never took possession. For much of the intervening time, the apartments have not been occupied or attended, and have suffered from the elements and acts of vandalism.

On February 5, 1947, the parties reduced the December 12th agreement to writing in an acknowledged instrument, all the material terms of which were identical to the terms of the December 12th agreement, excepting that, (a) the contract price was reduced to $4,500, (b) the Marshes acknowledged receipt of $961, and (c) there was a forfeiture clause which permitted the vendors, on the vendees' default, to forfeit, as liquidated damages, all payments previously made provided they gave the vendees written notice and a thirty-day period of grace.

In March, 1947, anticipating the payment of the first monthly installment on April 1st, Mr. Litel negotiated for a Federal housing loan and learned that the Marsh-Bates lawsuit was a cloud on the title which prevented them from securing the loan.

On March 18, 1947, the Litels informed the Marshes that they desired to "terminate" the contract and demanded return of the $961 down payment. Although appellants' theory

in the instant case is mutual rescission and although they treat this as an offer to rescind, it is noteworthy that this letter asserted the legal *right* to rescind based on respondents' material breach of contract in failing to supply title insurance.

The Marshes replied that they would furnish title insurance as soon as the Marsh-Bates lawsuit could be settled and indicated an intention to perform according to the terms of the contract.

Thereafter, until the trial date, the parties negotiated for a rescission. The Marshes' position was that they would accept the return of the apartments and would return the trailer if the Litels would reimburse them for the $1,328.16 balance paid to the finance company. The Litels, on the other hand, did not want the trailer back and insisted that if they gave up their rights under the contract they were entitled to reimbursement in the sum of $961, the amount credited for the trailer as down payment.

On June 18, 1947, the Marshes leased the apartments to a third person, but it was stipulated that the lease would be null and void if the Litels should choose to perform their contract. The tenant was in possession a very short time, and during August or early September, 1947, the Marshes themselves moved into the apartments and commenced to make substantial repairs and improvements. They have occupied the apartments continuously since.

Subsequent to the commencement of this action, the Marshes obtained and offered to the Litels a clear title and have reiterated their desire to proceed under the terms of the contract or, in the alternative, to effect the mutual return of the apartments and the trailer *if* the Litels would reimburse them for the balance paid to the finance company on the trailer.

This proposition was unacceptable to the Litels because they wanted $961 in cash.

On September 16, 1947, the Litels commenced this action for a rescission of the February 5th contract and for restitution of $961 in cash. After a trial by the court, judgment was entered for the Marshes, and it was further ordered

that the $961 be forfeited to the respondents as liquidated damages for the Litels' failure to perform the contract. They appeal from this judgment.

Appellants' three assignments of error raise two questions: Did the trial court err, first, in refusing to find a mutual rescission of the contract; and second, in ordering a forfeiture of $961?

Appellants' argument makes the second question dependent upon the first. They contend that the Marshes could have been in possession of the premises rightfully at the time of trial only by operation of one of three legal principles: either (a) because of the Litels' abandonment; (b) because of a legally declared forfeiture of the Litels' contract rights by the Marshes, neither of which occurred; or (c) by mutual rescission, which, they contend, did occur. Their argument concludes that, since there was a mutual rescission, the parties are entitled to be placed in *status quo*.

 Although the language of appellants' letter of March 18th asserts a unilateral right to rescind the contract based on respondents' material breach of contract arising out of the cloud on their title, no such contention is made in their briefs, and such a contention would not be supportable in view of appellants' own default in never having made any of the payments under the contract. See *Reddish v. Smith,* 10 Wash. 178, 184, 38 Pac. 1003, 45 Am. St. 781; *Palmer v. Washington Securities Inv. Co.,* 43 Wash. 451, 455, 86 Pac. 640; *Lea v. Young,* 168 Wash. 496, 505, 12 P. (2d) 601; *Hansen v. Ahrens,* 171 Wash. 500, 506, 18 P. (2d) 43, which involves a lease; *Eberhart v. Lind,* 173 Wash. 316, 319, 23 P. (2d) 17; *Alhadeff v. Van Slyke,* 176 Wash. 244, 250, 28 P. (2d) 797; *Thompson v. Huston,* 17 Wn. (2d) 457, 462, 135 P. (2d) 834, where the rule is recognized but not applied; *Kolosoff v. Turri,* 25 Wn. (2d) 452, 455, 171 P. (2d) 234; 55 Am. Jur. 927, Vendor and Purchaser, § 535.

Since appellants do not assert a *right* to rescind, and since we agree with them that there was neither abandonment by appellants nor forfeiture of appellants' contract rights by respondents, the issue of fact remaining is whether or not there was a bilateral *mutual* rescission of the contract.

■ The *sine qua non* of mutual rescission is the manifestation of mutual assent. The negotiations.between March 18, 1947, and the time of trial showed an absence of *express* mutual assent. They consisted of a series of offers and counteroffers only. It may be conceded that the parties were seeking mutual rescission, but it is obvious that they could not agree on its terms. The trial court did not err in finding that there was no mutual rescission of the contract. See 55 Am. Jur. 926, Vendor and Purchaser, § 534; Corbin, 40 Yale Law Jour. 1013, 1020.

■ Appellants contend, however, that their offer to rescind on March 18th was *impliedly* accepted when respondents *resumed* possession of the premises and leased them to a third person, and that this constituted a mutual rescission entitling appellants to a restoration of the *status quo.*

We agree with the trial court that there was no implied mutual rescission. There is no necessary inference from the fact of respondents' leasing and occupying the premises that it was done with the intention of accepting the offers of rescission that previously had been *expressly* refused.

The right to possession of realty ordinarily follows the legal title, and the vendee under an executory contract of purchase is not entitled to possession of the property unless the contract so provides, or unless he be placed in possession by the vendor. *Welch v. Hover-Schiffner Co.,* 75 Wash. 130, 134 Pac. 526; *White v. Coates,* 17 Wn. (2d) 686, 693, 137 P. (2d) 113; 66 C. J. 1034, Vendor and Purchaser, § 784. Since appellants have never taken possession, respondents have never been out of possession. Their leasing of the premises was made specifically subject to all of appellants' rights. See *Roethemeyer v. Milton,* 177 Wash. 650, 33 P. (2d) 99; *Van Keulen v. Sealander,* 183 Wash. 634, 638-40, 49 P. (2d) 19; *Roethemeyer v. Milton,* 187 Wash. 582, 585, 60 P. (2d) 694.

In *Rider v. Cottle,* 32 Wn. (2d) 538, 202 P. (2d) 741, it was held that, under certain conditions, the vendor of a chattel may take reasonable steps to protect his interest in the chattel, and that he may resume possession for that

purpose if he can do so peaceably. The *Rider* case involved chattels, but the principle may be applied in the instant case as an additional ground to support the court's holding that respondents' exercise of their right to preserve the property by occupancy was not necessarily an implied acceptance of appellants' offer of rescission.

Appellants' contention that they are entitled to restitution of $961 falls with the holding that there was no rescission of the contract.

Returning to the question of forfeiture, appellants contend that the entry of the order forfeiting $961 to respondents was an erroneous and illegal enforcement of the forfeiture clause in the contract, which the respondents had not invoked or exercised. They also assert that no damages were alleged and proved by respondents.

On the issues as framed by the pleadings, the trial court was faced with the alternative of entering a judgment for appellants granting restitution, or a judgment for respondents denying restitution. See 3 Williston on Contracts 2225, § 791.

The trial court did not err in making the additional provision in the judgment forfeiting the down payment. It was merely the necessary consequence of the denial of the appellants' claimed right of restitution.

Where, as here, a plaintiff is guilty of willful, persistent, and material breach of contract, he cannot recover his previous payments on the contract. 5 Williston on Contracts, § 1473; 2 Pomeroy's Equity Jurisprudence, § 452. A vendor who is not in default and who is ready, willing, and able to perform, may use a forfeiture-of-payments clause as a shield against such a plaintiff. There is a significant difference between using a forfeiture-of-payments clause as a shield and using it as a sword. 2 Pomeroy's Equity Jurisprudence, § 448; Cases on Remedies, Vol. 2, Restitution, Dawson and Durfee; contrast cases collected in § 1 (A) of Part 3 with cases collected in § 1 (B) of Part 3. When used as a sword, courts examine the facts critically to avoid penalties; when used as a shield, courts properly take a more liberal view. Corbin, *supra,* at p. 1023.

No vendee has a right of restitution (1) while the vendor still has a right to specific performance of the contract; Corbin, *supra*, at pp. 1016-23 and the cases cited therein; nor (2) while the vendor's damages exceed the vendee's payments, and in the latter situation the burden of making a *prima facie* showing is on the vendee. See Corbin, *supra*, at pp. 1023-27 and the cases cited therein.

■ The respondents at the trial were willing and able to perform the contract. They had not attempted to forfeit the down payment. They had not agreed to a rescission. The appellants cannot recover, and hence, when the court added language to the judgment which forfeited the down payment, it added nothing to the effect of a simple dismissal of the action.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and HILL, JJ., concur.

