[No. 14852. Department Two. February 14, 1919.]

S. RAYBURN *et al.*, *Respondents*, v. STEWART-CALVERT COMPANY, *Appellant.*[1]

LANDLORD AND TENANT (36)—PURCHASE BY TENANT—MERGER OF ESTATES. Where a contract for the purchase of mining claims expressly provided that it was subject to a lease which required payment of royalties for a two-year term, consummation of the contract by the lessee to whom it had been assigned does not merge the lease, or dispense with the payment of royalties during the term.

Appeal from a judgment of the superior court for Okanogan county, Truax, J., entered January 8, 1918, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*J. H. Templeton* and *P. D. Smith,* for appellant.

*Mulligan & Bardsley* and *E. A. Williams,* for respondents.

[1]Reported in 178 Pac. 454.

MOUNT, J.—This action was brought to recover $2,901, alleged to be due the plaintiffs for royalties or rent upon two mining claims. After issues joined, the case was tried to the court without a jury, and resulted in a judgment in favor of the plaintiffs for the amount claimed. The defendant has appealed.

The facts are as follows: On August 7, 1915, the respondents, being the owners of two certain mining claims in Okanogan county, leased these claims to one H. B. Brown for the purpose of taking sulphate of magnesia therefrom. The lease was written and provided that Mr. Brown should extract sulphate of magnesia from these claims, and that for every ton of sulphate of magnesia taken therefrom he was to pay a royalty of $2. At the time this lease was entered into, the title to these mining claims had not been acquired from the United States. The lessors simply had the right of possession. It was agreed that the lease should in nowise interfere with the right of the respondents to obtain title from the government. It was also agreed in the lease that, in case the lessee failed to comply with the terms of the lease, the lessors might, if they so elected, terminate the contract and all rights of the lessee thereunder. Mr. Brown took possession of the mining claims and proceeded to extract sulphate of magnesia therefrom. He afterwards assigned the lease, and the Stewart-Calvert Company, with the consent of the original lessors, took possession of the claims and proceeded to take magnesium sulphate therefrom under the terms of the lease. Thereafter, on November the 13th, 1915, W. H. Stewart entered into a contract with the respondents to purchase the two mining claims for a consideration of $8,000. The contract was in writing and provided, among other things, that Mr. Stewart would place

$1,000, within ten days from the date of the contract, with a copy of the contract, in the First National Bank of Oroville, Washington, to be held by that bank until the respondents should deliver a patent and warranty deed of the property to the bank; that, upon the delivery of the patent and deed, the bank should then deliver the $1,000 deposited, and thereafter $7,000 should be paid in installments; and that, when the installments were fully paid, the bank should deliver the patent and deed to Mr. Stewart. It was also provided that Mr. Stewart should have the right and privilege to pay all of the deferred payments prior to the maturity thereof. The contract then provided as follows:

"It is further agreed and understood by and between the parties hereto that this option and agreement or the consummation of this agreement shall in nowise affect that certain lease and agreement made by and between W. C. Hancock, G. M. Rayburn and S. Rayburn, parties of the first part, and H. B. Brown, party of the second part, which said agreement was made on the 7th day of August, 1915, and concerning the property described herein, and which said agreement and lease is now in full force and effect, and is now owned by the Stewart-Calvert Company, a corporation, and this option and agreement is made subject to the aforesaid lease and agreement. It is further agreed and understood that time is the essence of this agreement."

Thereafter, on the 16th day of November, 1916, in pursuance of the contract of purchase, Mr. Stewart deposited with the First National Bank of Oroville, for the use and benefit of the respondents, the sum of $1,000, together with a copy of the contract of purchase; and on the 28th day of July, 1916, Mr. Stewart assigned his contract of purchase to the Stewart-Calvert Company, and on the same day the Stewart-Calvert Company, in accordance with the contract made

between the respondents and Mr. Stewart, deposited with the bank, for the use and benefit of the respondents, the sum of $7,000, being the full purchase price on the mines. On the day the whole purchase price was deposited with the bank, Mr. Stewart, by letter, notified the respondents that the full purchase price agreed upon had been deposited with the bank subject to their order, upon delivery to the bank of a deed and a United States patent. On the same day, the bank notified the respondents that the full purchase price of the mines had been deposited to be paid by the bank to respondents upon the delivery of a deed and a United States patent for the mining property. The respondents did not execute a deed, and the money thereafter remained in the bank subject to the order of the respondents upon complying with the terms of the contract of sale. After the money was deposited by the appellant in the bank as stated, the appellant refused to pay royalties under the lease, and this action was brought, on March 29, 1917, to recover the royalties alleged to be due at that time, viz., $2,901.

The appellant takes the position that, after it had purchased the mining claims and paid the full consideration into the bank in accordance with the written contract of purchase, it was holding the mining claims as owner and not as lessee. It relies upon the rule that the purchase by the lessee of the interest of the lessor during the existence of the lease merges the two estates, and argues that the original lease executed by the lessors became merged into the contract of sale at the date of the payment of the purchase price by the lessee. This is ordinarily the rule, but in this case the contract of purchase expressly recites that

"The consummation of this agreement shall in nowise affect that certain lease and agreement made by

and between W. C. Hancock, G. M. Rayburn and S. Rayburn, parties of the first part, and H. B. Brown, party of the second part, which said agreement was made on the 7th day of August, 1915, and concerning the property described herein, and which said agreement and lease is now in full force and effect, and is now owned by the Stewart-Calvert Company, a corporation, and this option and agreement is made subject to the aforesaid lease and agreement.''

Without that provision in the contract of purchase the rule contended for by the appellant would no doubt apply; but where the purchase is made expressly subject to the lease for a two-year term, we think that rule does not apply. The parties, no doubt, had a right to stipulate that the revenue derived from the lease should continue for the term of the lease, which was for two years. The lease was apparently a profitable one and the parties had a right to take that fact into consideration and make the sale subject to that lease, so that the sale would not avoid the lease. That agreement, it seems to us, is clearly and specifically stated in the contract of purchase. We are of the opinion, therefore, that, even though the contract of purchase was consummated, the lease was valid to the end of the two-year term and the respondents were entitled to their rents or royalties up to that time, in addition to the purchase price of $8,000.

The judgment appealed from is therefore affirmed.

MAIN, FULLERTON, PARKER, and HOLCOMB, JJ., concur.