[Nos. 28923, 28924. Department Two. May 5, 1943.]

FRANK H. WHITE, *Appellant*, v. GEORGINA W. COATES, *Respondent.*[1]

[1]Reported in 137 P. (2d) 113.

G. *Robert Huston,* for appellant.

W. *B. Clark,* for respondent.

BEALS, J.—Prior to February 26, 1942, Glenn J. Fisher, being the owner of a twenty-acre tract of orchard land, leased the property to Frank H. White for the term ending February 1, 1943, the lessor to receive as rental one-third of all fruit crops produced thereon during the term of the lease, each kind of fruit so produced to be jointly marketed and the proceeds divided, one-third to lessor and two-thirds to lessee. The lease provided that the lessee might at his option execute a chattel mortgage upon his two-thirds share of the crops to be produced, and also prohibited an assignment of the lease or subletting of the property by lessee without lessor's written consent. Lessee was also granted the right to renew the lease upon the same conditions for an additional period to terminate February 1, 1944, the lease continuing:

"Provided, however, that this lease is made subject to sale of said property by the lessor, but in the event of sale lessee shall have a prior and preferred right to purchase the same, and in any event lessee shall have the right to retain possession thereof until the end of the 1942 harvest season.

"Lessor hereby grants to lessee an option to purchase said property for the sum of $6500.00 until Nov. 1st, 1942."

March 11, 1942, the parties executed a "supplemental agreement" in the following form:

"Supplementing the terms and provisions of that certain lease between Glenn J. Fisher, lessor and Frank H. White, lessee, dated February 26, 1942, relative to the following described property situated in Yakima county, Washington, to-wit:
[Description of property]
it is hereby mutually agreed, for valuable consideration, by and between said parties as follows:

"Said lessee shall have until November 1, 1942 to notify lessor as to whether or not he exercises the option to purchase said property for the sum of $6500.00; and in event he exercises said option, the same shall be done by written notice to said lessor or to his representative, Elwood Hutcheson, and a down payment of $100.00 to be applied upon said purchase price on or before November 1, 1942. In the event lessee exercises said option, he shall then have until February 1, 1943 in which to pay to lessor the balance of the said purchase price.

"Except as herein modified, all of the terms and provisions of said lease shall remain in full force and effect."

April 25, 1942, Mr. Fisher conveyed the property to Georgina W. Coates, subject to the lease and option held by Mr. White, as modified by the supplemental agreement of March 11, 1942, the grantees agreeing to carry out the terms of the lease.

May 1, 1942, Mr. White attempted to exercise his option of purchase by serving a notice upon Mr. Fisher and another, whom he believed to own the property, the conveyance from Mr. Fisher having not been at that time recorded. May 29th following, Mrs. Coates notified Mr. White that she owned the property, and

that any tender under the option should be made to her. She also advised Mr. White that, notwithstanding any purchase of the property by him, she would expect to receive, pursuant to the lease, the landlord's share of the 1942 fruit crop. June 1st, Mr. White tendered to Mrs. Coates one hundred dollars, and notified her that he elected to exercise his option to purchase; that from that time on he considered himself a contract purchaser in possession under a contract of sale; that the lease had terminated; and that he claimed the entire proceeds of the 1942 crop. Mrs. Coates refused to recognize Mr. White's claimed rights.

A clear-cut dispute then existing between the parties, Mr. White, June 4, 1942, filed in the superior court a complaint, naming Georgina W. Coates as defendant, alleging the facts as above stated, and praying for a declaratory judgment adjudging that he was entitled to all crops to be raised on the land during the crop year of 1942; that the defendant had no interest therein; that the lease had become ineffective; and that the three documents, the lease, the supplemental agreement, and the writing which plaintiff executed exercising his option of purchase, be declared to constitute a contract for the purchase of the land by plaintiff, effective the date the complaint was filed.

Defendant filed her answer, admitting the truth of the allegations of fact in plaintiff's complaint, but denying that upon those facts plaintiff was entitled to the relief which he asked, and also pleading affirmatively an alleged oral agreement between plaintiff and Mr. Fisher at the time the supplemental agreement was signed, and that by mutual mistake the complete terms of the oral agreement were not carried into the written supplemental agreement. Defendant prayed for a declaratory judgment in her favor, or in the alternative that the lease and supplemental agreement be reformed.

By his reply, plaintiff denied all affirmative allegations in defendant's answer. A hearing was had, whereupon the court filed a memorandum opinion, to the effect that the lease had not merged into a contract of purchase, but was still in full force and effect.

August 10, 1942, and before the entry of any final order in the declaratory judgment action, Mr. White tendered to Mrs. Coates the full purchase price mentioned in his option, and demanded a deed. The tender having been rejected, the following day Mr. White filed in another action then pending before the superior court for Yakima county between the same parties, an amended complaint, alleging the facts hereinabove set forth, together with the additional fact that he had tendered to Mrs. Coates, the defendant, the full purchase price of $6,500, which tender had been refused. Plaintiff asked for a decree of specific performance, adjudging that defendant accept the tender and convey the property by warranty deed to plaintiff. Defendant answered, denying the material allegations of the complaint, and, after a trial, the court entered a decree denying the prayer of the complaint, declaring that the lease and supplemental agreement were still in full force and effect and awarding defendant specific performance thereof, and directing that plaintiff deliver to defendant one-third of the 1942 fruit crop, according to the terms of the lease. On the same day, judgment was entered in the action for a declaratory judgment, adjudging that the defendant Coates was entitled to one-third of the fruit crop.

From these two judgments, plaintiff prosecuted separate appeals to this court. The two cases, involving the same question, were by stipulation here consolidated, and both appeals will be considered herein.

Appellant assigns error upon the refusal of the trial court to hold that appellant's notice, dated May 1, 1942,

that he exercised his option to purchase, together with the accompanying tender of one hundred dollars, converted the option into an executory contract of purchase. Appellant also assigns error upon the refusal of the trial court to hold that upon the record the lease had become merged into an executory contract of purchase. Error is also assigned upon the admission of certain testimony over appellant's objection; upon the refusal of the trial court to decree specific performance, as asked by appellant; and upon the entry of the judgments appealed from.

A single question is presented by appellant, that under the facts he was entitled either to an order declaring the lease merged into an executory contract of purchase as of June 1, 1942, or to a decree of specific performance directing that the property be conveyed to him as of August 10, 1942, the effect of either order to be that appellant would be the sole owner of the entire 1942 fruit crop, without being required to account to respondent for any portion thereof.

The lease held by appellant covers the period required to grow, harvest, and market a year's fruit crop, the term of the lease representing necessarily a time unit which is not capable of reasonable subdivision. The occupation of a dwelling for any period has at least some value, but for a tenant to obtain a return from a crop lease of an orchard, it may be stated that, as a general principle, the lease must cover a crop year.

The lease in question granted appellant an option to purchase the property for $6,500, prior to November 1, 1942. The lease was later supplemented by the agreement of the parties above quoted. Manifestly, the lease is one thing, and the option to purchase another and a different right available to appellant.

■ This court has several times followed the modern rule that the doctrine of merger is not favored

either at law or in equity. Courts will not hold that a merger has taken place when to so hold would work injustice. Occasion to apply this principle has often, possibly generally, arisen in cases where a holding that a merger had been effected would be unjustly prejudicial to the person who has acquired two or more different estates in the same property, but the rule should apply with equal force to one in respondent's position. The rule was so applied by this court in the case of *Rayburn v. Stewart-Calvert Co.*, 105 Wash. 570, 178 Pac. 454, which case will be referred to later. The general rule was approved and followed by this court in the recent case of *Mobley v. Harkins*, 14 Wn. (2d) 276, 128 P. (2d) 289.

The supplemental agreement of the parties, after somewhat extending appellant's rights under his option agreement contained in the lease, continues:

"Except as herein modified, all of the terms and provisions of said lease shall remain in full force and effect."

Appellant contends that, when on May 1, 1942, he tendered respondent a down payment of one hundred dollars, and served notice that he was exercising his option to purchase, the relationship between him and respondent was immediately changed, and that appellant then became possessed of the land as a holder under an executory contract of purchase.

Appellant took possession under a lease. Neither the lease nor the supplemental agreement makes any provision for an executory contract of purchase. Of course, the option to purchase the property for cash would require no such document. In the absence of an agreement to that effect, the tender of the one hundred dollar down payment could not by any magic transmute appellant's possession to that of one under an executory contract of purchase.

█ The vendee under an executory contract of purchase is not entitled to possession of the property unless the contract so provides, or he be placed in possession by the vendor. *Welch v. Hover-Schiffner Co.,* 75 Wash. 130, 134 Pac. 526; 66 C. J., title "Vendor and Purchaser," p. 1034, § 784.

The trial court correctly held that, after the tender of one hundred dollars, appellant remained in possession of the property as a tenant under the crop lease.

█ The lease and the agreement supplemental thereto must be considered together, and should receive a reasonable construction. Both these documents were prepared by lessor, and, as appellant argues, any ambiguity should be construed against respondent.

In the case of *Rayburn v. Stewart-Calvert Co.,* 105 Wash. 570, 178 Pac. 454, this court considered a somewhat similar problem. The plaintiffs were the owners of two mining claims, which they had leased to one Brown for the purpose of removing sulphate of magnesia. The lessee was to pay lessors a royalty of two dollars for every ton of magnesia removed. The claims were unpatented, lessors holding and mining them under location rights. The lessee, with lessors' consent, assigned the lease to the defendant, which continued the mining operations. Thereafter, W. H. Stewart entered into a contract with lessors, whereby lessors agreed to sell the claims to Mr. Stewart for eight thousand dollars. This contract was later assigned to the defendant in the action, the lessee by assignment of the lease. By the terms of the contract, the vendee agreed to deposit in a bank one thousand dollars, with a copy of the contract, to be held until the plaintiffs delivered a United States patent conveying the property to them, together with a warranty deed to vendee. Upon deposit of these documents, the bank should deliver the thousand dollars to plaintiffs, and when vendee had

paid the balance of seven thousand dollars to the bank for plaintiffs, the bank should deliver the deed and patent. The contract between the parties contained the following provision:

"It is further agreed and understood by and between the parties hereto that this option and agreement or the consummation of this agreement shall in nowise affect that certain lease and agreement made by and between W. C. Hancock, G. M. Rayburn and S. Rayburn, parties of the first part, and H. B. Brown, party of the second part, which said agreement was made on the 7th day of August, 1915, and concerning the property described herein, and which said agreement and lease is now in full force and effect, and is now owned by the Stewart-Calvert Company, a corporation, and this option and agreement is made subject to the aforesaid lease and agreement. It is further agreed and understood that time is the essence of this agreement."

The agreement was performed by the vendee, and when the balance of seven thousand dollars was deposited in the bank, delivery of the patent and deed was demanded. Plaintiffs did not execute the deed, and the money remained in the bank, subject to delivery of the deed from plaintiffs. Stewart-Calvert Company, the holder of the lease, and assignee of W. H. Stewart, the vendee in the executory contract, thereupon refused to pay to plaintiffs further royalties, and the action was instituted to recover royalties then due. The defendant in the action contended that it had purchased the mining claims, paid the full consideration therefor, and was thereafter, under the doctrine of merger, holding the claims as owner and not as lessee. This court held that, in view of the portion of the contract above quoted, no merger had taken place, that the lease was valid to the end of the two-year term, and that the plaintiffs were entitled to their rents or royalties up to that time, in addition to the purchase

price of eight thousand dollars. The court preserved the term of the lease in accord with the evident intent of the parties as expressed in the contract.

While the provision above quoted from the contract between the plaintiffs and W. H. Stewart goes more into detail and is somewhat more definite than the supplemental agreement before us in the case at bar, the last sentence of the supplemental agreement contains the essence of the paragraph of the contract for the sale of the mining claims in the case cited.

Neither the industry of counsel nor our own research has disclosed any other authority particularly in point.

In the case at bar, the trial court, over appellant's objection, admitted oral testimony concerning the conversation between appellant and the then lessor's counsel, at the time the supplemental agreement was signed. At the close of the trial, the superior court expressed the opinion that, while such testimony probably was admissible to show the then intent of the parties and to prove the consideration moving to appellant for the extension, the court would disregard the testimony, for the reason that the terms of the lease and the supplement thereto were plain and unambiguous, and showed that appellant's contention was not well founded. As we agree with the trial court in this conclusion, we have not considered the oral testimony.

In the case of *Pate v. Gaitley*, 183 N. C. 262, 111 S. E. 339, the court held the tenant under a crop lease liable for an agreed share of the crop, giving effect to oral testimony tending to prove that the lessee had agreed to pay this rental even though he had received a deed to the land. The question considered turned largely upon the admissibility of the oral testimony.

By the supplemental agreement, appellant obtained an extension of time within which to pay the purchase price of the land, if he decided to take up

his option. It is easy to understand that this extension might well be of material assistance to appellant in making the purchase.

While the lessor in the position of respondent's predecessor in interest might have so contracted as to put himself in the position in which appellant contends respondent stands, the intent to make such a contract should clearly appear from the language used.

We agree with the trial court that the lease and the language of the supplement thereto show a contrary intent. The lease covered a definite period, the crop year, within which the crops would be cared for, grown, and harvested. By the supplemental memorandum, appellant was accorded an extension of time within which to pay the purchase price of the property in case he should desire to exercise his option to purchase. At that time the parties agreed that, "except as herein modified, all of the terms and provisions of said lease shall remain in full force and effect."

Appellant cites many authorities bearing upon different phases of the litigation, but we find among them none which, in connection with the matter upon which the case must be decided, requires discussion.

The trial court correctly held that respondent is entitled to her share of the crop reserved as rental. The judgments appealed from are affirmed.

SIMPSON, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.